AUGUST GROLLIMUND, DEFENDANT IN ERROR, v. THE GERMANIA FIRE INSURANCE COMPANY, PLAINTIFF IN ERROR.

Argued December 4, 1911—Decided June 20, 1912.

1. A policy of insurance for "$2,000.00 on two three-story frame building, tin roof, and its additions and foundation walls, while occupied as a dwellings Nos. 69 and 71 East Twelfth street, Paterson, New Jersey, and being $1,000.00 on each building," is in its legal effect a specific policy of $1,000 on No. 69 East Twelfth street and $1,000 on No. 71 East Twelfth street, and is not a blanket policy on both Nos. 69 and 71.

2. A policy of insurance for "$2,000.00 upon the three-story frame building, and its additions adjoining and communicating, including gas and water pipes, heating apparatus and all permanent fixtures, while occupied as a dwelling-house and situated Nos. 69 and 71 East Twelfth street, Paterson, New Jersey" is not a specific policy on No. 69 and No. 71, but is a blanket policy on both and covers to its full amount of $2,000 both Nos. 69 and 71.

3. In distributing the loss upon two parts of a building under one roof, and each part capable of being described and insured by street numbers, between an insurance policy covering both parts for a gross sum and a policy specifically liable on each part, both of which policies grant permission to "effect other insurance" and provide that the liability shall not be greater "than the amount hereby insured shall bear to the whole insurance," the blanket policy should be regarded as insuring each part to the entire amount unappropriated when it is reached, making the adjustment part by part in the order of the greater loss, if that will work substantial equity and justice to all concerned, and deducting the sum appropriated to the part as it is adjusted and passed.

On error to the Supreme Court.

For the plaintiff in error, *John R. Hardin.*

For the defendant in error, *Hunziker, Randall & Cunningham* and *Edward A. Day.*

The opinion of the court was delivered by

TRENCHARD, J.   August Grollimund sued to recover the amount claimed as indemnity under a contract of insurance issued to him December 2d, 1907, by the Germania Fire Insurance Company.   The insurance was against loss or damage by fire for the term of three years from the date of the policy, in the amount of "$2,000.00 on two three-story frame building, tin roof, and its additions and foundatioon walls, while occupied as a dwellings Nos. 69 and 71 East Twelfth street, Paterson, New Jersey, and being $1,000.00 on each building."

The policy was on the standard form and contained the following provision: "This company shall not be liable under this policy for a greater proportion of any loss on the described property, or loss by the expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property, and the extent of the application of the insurance under this policy or of the contribution to be made by this company in case of loss, may be provided for by agreement or condition written hereon or attached or appended hereto."

To the policy in question, pursuant to the terms of the standard clause just quoted, there was attached a rider, granting privilege "to effect other insurance" and containing, with reference to such other insurance, the following paragraph:

"Provided, however, that if there shall be any other insurance on said building, this company shall be liable only for such proportion of any loss as the amount issued hereby shall bear to the whole insurance on the property hereby insured, whether such insurance applies in the same manner or not."

The property insured was damaged by fire March 23d, 1909, the total damage being $1,760.93, being distributed between

the two parts in the proportion of $1,477.73 to No. 69 and $283.20 to No. 71.

The trial, at the Passaic Circuit, before the judge sitting without a jury, resulted in a judgment for the plaintiff against the company for $880.47, with interest, being one-half of the total loss, and the company sued out this writ of error.

The defendant, at the trial, conceded that it was liable for $633.13, and requested the court to find that amount to be its total liability.

The assignments of error center on the effect of other insurance on the same property upon the extent of the liability of the defendant upon the policy in suit.

The description of the property as contained in this policy, when literally copied, reads rather strangely, but so reads because it is partly written on a printed blank, and, as often happens in filling blanks, singulars and plurals are slightly mixed, but without detriment to the evident meaning. It is in legal effect a specific policy of $1,000 on No. 69 East Twelfth street and $1,000 on No. 71 East Twelfth street, and is not a blanket policy on both Nos. 69 and 71. It was so declared on, and the court below properly so held.

If there were no other insurance on the property described in this policy, the whole amount of the specific insurance on No. 69 would be insufficient to meet the loss on that number, while on No. 71 the specific insurance would exceed the loss. The insured would in that case, therefore, have been entitled to recover $1,000 on 69 and $283.20 on 71, or $1,283.20 in all.

But on June 8th, 1907. several months prior to the taking out of the defendant's policy, the insured secured from the Rochester German Insurance Company a three-year policy, which, however, was not specific on No. 69 and No. 71, but was a blanket policy and covered to its full amount of $2,000 both numbers 69 to 71. The court below properly so held. In the Rochester policy, the insurance was "$2,000.00 on the three-story frame building, and its additions adjoining and communicating, including gas and water pipes, heating apparatus and all permanent fixtures, while occupied as a dwelling-

house and situated Nos. 69 and 71 East Twelfth street, Paterson, New Jersey." This policy was also on the standard form, and contained permission for other insurance without notice.

At this point we pause to remark that Grollimund, the plaintiff in this case, has recovered a judgment in like amount against the Rochester German Insurance Company on the policy last referred to, and has sued out a writ of error in that case, so that the judgments entered against both the Germania and the Rochester are now before this court, and have been argued together.

The insured, as we have seen, made the Rochester contract first, and it was blanket insurance, and on what was described as a single building (such description being without doubt not strictly accurate). He later took out specific insurance on the two parts of the same building in the specific amount of $1,-000 each, having been permitted so to do by the leave given in the earlier policy to take out further insurance without notice. He has thus created a situation which leads to embarrassment in determining the liabilities of the insurance companies under the two contracts.

Now, the insured's rights, as against the defendant in this case (and in the other case also) must be determined from the contract made between the insured and the company, and not by an adjustment of equities between insurance companies *requiring the court to rewrite the contract* so sued upon and make a new and different contract.

Questions of contribution between co-insurers have caused much trouble to the courts, a large part of which has arisen through efforts to equalize equities outside of the contract. This trouble is lessened if the parties are left with their contracts as they themselves have made them.

That the judgment against the Germania company, in the present case, is manifestly unjust and contrary to its contract, is, we think, demonstrable. The contention that the insurance in respect to both policies was concurrent and that, therefore, both companies, having insured for equal amounts, should pay in equal proportions the loss, is not supported by the contracts. In the Rochester policy, the insurance was $2,000, covering

both numbers. Any structure under one roof, with two separate entrances, is, in a general sense, one building, and if the Rochester company chose to insure in blanket form, it elected to take all the loss that was coming on either building. At the time the Rochester policy was taken out, there was no other insurance, and if the fire had taken place before the option to take other insurance had been exercised, the loss of the Rochester company would have been, inasmuch as the loss did not equal the total insurance, the whole amount of $1,760.93, and it would have made no difference in the liability of the Rochester company whether the loss was all on 69, or all on 71, or equally divided between 69 and 71.

The permission in the Rochester policy to take out other insurance did not limit the insured to blanket insurance on both 69 and 71, but permitted him to take out specific insurance on 69 and 71, or on either, if he so preferred. He did elect to take out specific insurance of $1,000 on each number, and in adjusting the amount to be paid by the Germania, it is entitled as against the insured to the benefit of the co-insurance represented by the Rochester policy, and is liable only for such proportion of the total loss occasioned by the fire at No. 69 as the sum of $1,000 shall bear to the whole insurance on that number, and on No. 71 as the sum of $1,000 shall bear to the whole insurance on that number.

The loss on 69 was $1,477.73. If the insured had taken out no specific insurance on No. 69, and $1,000 on No. 71, the Rochester company would have been called upon to pay $1,477.73, the entire loss on No. 69, and as to No. 71, the balance of its policy, or $633.13, would have pro rated with the specific Germania insurance policy of $1,000.

So, if the insured had taken out $1,000 of specific insurance in the Germania on No. 69, and no specific insurance on No. 71, the Rochester company would have been called upon to pay on No. 71 the loss on that number of $283.20; the remaining amount of its policy not needed to satisfy that loss, that is to say, $1,716.80, would have pro rated with the Germania specific insurance of $1,000 in paying the loss of $1,477.73 on No. 69.

If we now consider that the insured had no policy in the Rochester, and had $1,000 on No. 69 in the Germania and $1,000 on No. 71 in the Germania, the Germania's loss would be on No. 69, $1,000, and on No. 71, $283.20, or $1,283.20 in all.

The assumption, therefore, that the situation as to the two companies, the Rochester with a blanket policy of $2,000 on both numbers, and the Germania with $1,000 on each number, is the same, is shown groundless, because, without consideration of the other, the liability of the Rochester, under the blanket policy, is $1,760.93, and of the Germania, under the two specific policies, is $1,283.20.

Under the policies issued by both companies, neither company is liable under the policy for a greater proportion of any loss on the property described therein than the amount thereby insured shall bear to the whole insurance covering such property.

This clause for pro rating is a limitation upon the contract to indemnify the assured to the extent of his loss. The assured has not taken from either company an unqualified obligation to indemnify him to the extent of his loss, or to the extent of his loss limited to the amount of his policy. He has made with both companies contracts which give them as against him a benefit arising from co-insurance. The liability of each company to the assured is limited, depending upon the existence of the amount of the co-insurance of the other. Each company is liable only for the proportion of the loss on the described property in its policy that the amount insured shall bear to the whole insurance on such property.

It is true that the insured is entitled to have from the two companies, if his loss did not exceed the total amount of insurance available to meet the loss, the amount of such loss. But, in the present case, to divide the loss equally between the two companies would compel a contribution from the Germania to the Rochester of $880.47, or only $402.73 less than the total liability of the Germania on its policy on both numbers, without reference to the Rochester; and the Rochester, with a total liability on its policy of $1,760.93, without refer-

ence to the existence of the Germania policy, would be relieved of exactly half of its responsibility, or $880.46. This method of dividing the loss would work to the advantage of the Rochester company by the difference between $880.46, of which it would be relieved, and $402.73, of which the Germania would be relieved, such difference being $477.73. By this method the blanket policy on both numbers, carrying naturally the greater loss, would derive from the pro rating clause a greater benefit than the specific risks on each number of lesser amount.

Such a result is manifestly wrong, and writes a new contract for the Germania, in that it deprives it of proper contribution from its co-insurer, but more markedly writes a new contract for the Rochester, in that it converts its blanket policy into a specific policy of $1,000 on each number. By this method there is absolutely no difference between the two contracts, and blanket insurance and specific insurance involve exactly the same risk on the part of the two companies, and this, notwithstanding that if the blanket policy alone had been on the property, the loss under it would have been $1,760.93, and if the policy with specific risks on the two numbers had been alone, its loss could have been only $1,283.20.

It is axiomatic that a blanket policy is a greater risk than the specific, and in natural equity the assumption of the greater risk is not inequitably attended by larger loss.

It is true that in a general sense the amount of the Germania policy was equal to the amount of the Rochester policy, inasmuch as the ultimate possibility of loss on each policy was $2,000. But under the Rochester policy $2,000 could be lost on either No. 69 or No. 71, while under the Germania policy only $1,000 could be lost on No. 69, and only $1,000 could be lost on No. 71.

There is but little if any conflict of law, text-book or case, on the general principle that blanket insurance covers every item included in the property described in the policy to its whole amount, and the destruction of any item so covered, even though all other items should remain entirely uninjured, demands an indemnity from the insurer, if the loss be so great, to the entire amount of the policy.

Of course, policies are sometimes issued blanket in form, with limitation of loss to a specific amount of any one item, as for instance policies on live stock with a loss not to exceed a small amount on any one animal. Policies also sometimes contain what are called distribution clauses, by which the amount insured attaches in proportion of the value of the property contained in individual parcels to the value of the property as an entirety.

But the blanket policy in the present case contains nothing by way of limitation or distribution, and its full amount is fully applicable at all times to every part and parcel of the property described in the policy. To forget this is to make the policy specific and a different thing than what it was and was intended to be. To remember this is to leave the contract as the parties made it.

It has been said that questions arising out of the application of blanket insurance and specific insurance are among the most troublesome in the law of insurance, and it must be conceded that there is considerable difference of opinion evidenced by the authorities. It must also be conceded that every rule that has been worked out has been the subject of criticism, and no rule has been as yet formulated which absolutely commends itself in all supposable cases.

The function of the court, however, is not safely discharged in the endeavor to lay down a rule which will meet all supposable cases. Contracts and facts are seldom exactly identical in even two cases. The contract and the facts before the court in the given case are the safest guide to a correct conclusion.

The learned trial judge adopted the Vermont rule, socalled, applied in the case of *Chandler* v. *Insurance Company of North America,* 70 *Vt.* 562. The reason advanced by the court for this rule is as follows: "As by the terms of the specific policies, they cannot be converted into blanket policies, it necessarily follows that the only way in which the loss can be adjusted is to turn the blanket policies into specific ones, *i. e.*, determine how much of the full amount a blanket

policy shall be apportioned to each of the three respective items, according to their respective values."

But this seems to us without justification in any blanket contract of insurance considered by itself, and inequitable in relation to specific insurance on items covered by the blanket policies, inasmuch as it puts blanket and specific contracts on a level of liability when in the very nature of the two contracts there is great difference in the risk assumed.

In the Chandler case, the court arrived at the amounts of the specific policies into which it converted the blanket policy by taking the amount of the loss as to each item as the representative of its value, because in that case the loss was the full value and less than the total amount of insurance. The rule as announced by the court calls for an apportionment according to sound value. What function such value has under the circumstances for the fixing of indemnity collectible under a contract of insurance is not perceivable, except in so far as indemnity is sometimes limited in amount by sound value or some proportion thereof.

Moreover, it is admitted that the application of this rule, which is also sometimes called the Reading rule, may lead under some conditions to results violative of the principle that the assured should receive full indemnity. To this principle every rule should bend.

In the present case, however, the insured cannot apply the Vermont rule under the evidence. No proof has been offered by the plaintiff of sound value, and the court cannot assume that Nos. 69 and 71 are of equal sound value.

The effect of the Vermont or Reading rule is exactly the same as though the policy had originally contained a distributive clause, applying its blanket amount to different items in proportion to value. This clause is sometimes put in policies, and if so, the rule is no doubt properly applied. In the absence of such a clause, the application of the rule makes a new contract.

The rule which we think should be applied to the present case is that which is called the Connecticut rule, of which the case of *Schmaelzle* v. *London and L. Fire Ins. Co.*, 75

*Conn.* 397, 60 *L. R. A.* 536, is an application. This rule is sometimes styled by text-writers the "Gradual Reduction" rule. Like other rules it has been the subject of criticism, but its reasoning is, when applied to the trial of an issue in a court of law, much more satisfactory than can be found in the cases supporting the other rules.

It proceeds on the validity of the contract of insurance as made between the assured and the company and enforces the contract as it is found.

In the Schmaelzle case, the plaintiff was the owner of premises upon which stood a brewery and a shed. In the brewery were machinery and stock, upon which buildings, machinery and stock, the plaintiff carried in thirty-four different companies insurance against fire aggregating $60,000 in amount. These policies were all of the standard form and contained a provision as to pro rating found in the policy of the Germania company in this case and also in the Rochester policy. Thirty-one of the policies, covering insurance for $55,000, were "blanket" policies, that is, they covered buildings, machinery and stock as a whole and without distributing the amount of the insurance among several items. The remaining policies containing insurance for $5,000 were of the kind known as "specific" policies, that is, the amount insured thereby was distributed among the several items of property with a specific amount for each item. Each of these specific policies covered in the whole precisely the same property as did the compound insurance, but distributively. This distribution was uniform among the specific policies and was among four separate items, the main or brewery building, stock, machinery and a shed. The loss was distributed without friction, and the question was as to the apportionment between the blanket and specific policies. The court held that in distributing the loss upon the building, machinery and stock between the insurance policies covering all the items for a gross sum and those specifically liable on each item, all of which provided that the liability shall not be greater "than the amount hereby insured shall bear to the whole insurance," the blanket policies should be regarded as insuring each item

to the entire amount unappropriated when it is reached, making the adjustment item by item in the order of the greatest loss, if that will work substantial equity and justice to all concerned, and deducting the sums appropriated to the respective items as they are adjusted and passed.

That case is on all fours with the case now before the court in that the items mentioned in the specific policies comprised in the aggregate the property described in the blanket policies. It is an exact authority from a court of high reputation, and the principles on which it rests are strongly presented. When applied to the facts of this case the opinion itself contains an answer to every criticism that has been advanced against it.

True, it has been criticised as penalizing the blanket policy. It is not clear that the criticism is well founded, but it is clear that such criticism ought not to be given undue weight in the enforcement of a contract in a court of law. If parties are not to be left to make their own contracts in matters of insurance, it is for the legislature, which has already established the standard form, to go further and prescribe a clause covering the apportionment of blanket and specific insurance.

It is said that the Schmaelzle case works an interference with the modern eighty per cent. co-insurance clause, but in the present case there is no such difficulty, as there is no such clause or other limitation of like character in the policies.

The only criticism against the Connecticut rule (which is free from attack on many of the grounds to which the others are open) not fully answered by an appeal to the contract itself, is its arbitrary application of the order in which the blanket insurance shall be applied in the course of "gradual reduction" to the items covered by it. The Connecticut court as to this said: "One other point remains to be considered. As the existence of the specific policies compels the adjustment of the loss by items, these items must be taken up in some order. This order might very materially affect the result, both as respects the companies and the insured, since that portion of a blanket policy which is exhausted in the settlement upon the first item no longer remains to be

applied to the second item, and so on through the list. This matter of order is one upon which the policies in suit and policies ordinarily are silent. Evidently nothing remains but some arbitrary method of selection, in which the considerations influencing a choice should be what, on the whole, under the conditions, best satisfies the ends of fairness and justice as between the companies, the assured being given his rightful amount of indemnity. A little study of the peculiar situations which may arise may convince one that no rule of universal and unvarying application can be safely laid down. Whether one suggests the order of the greatest losses, or of the least losses, or the order of the enumeration in the special insurance, or an order to be determined by lot—two at least of which methods appear to have been used—or some other order, he will quite likely be met with an assumed situation in which his system seems to fail to fully accomplish equity and justice. Fortunately, we have no need to search for a universal rule. In the present case it matters not to the assured, and little to the insurers, what order of adjustment is adopted. The order first indicated, to wit, that of the greatest losses, is one which, as a general rule, has some consideration in its favor. In this case it works substantial equity and justice to all concerned. We therefore select it for the purposes of this case as on the whole the best."

The language is applicable to the case now before the court.

Our conclusion therefore is that the problem now before the court should be solved by the application of the following rule: In distributing the loss upon two parts of a building under one roof, and each part capable of being described and insured by street numbers, between an insurance policy covering both parts for a gross sum and a policy specifically liable on each part, both of which policies permit of other insurance and provide that the liability shall not be greater "than the amount hereby insured shall bear to the whole insurance," the blanket policy should be regarded as insuring each part to the entire amount unappropriated when it is reached, making the adjustment part by part in the order of greater loss, if that will work substantial equity and justice

to all concerned, and deducting the sum appropriated to the part as it is adjusted and passed.

The application of that rule to the present case results as follows: The loss on No. 69 is $1,477.73. The Rochester blanket policy of $2,000 being first applied on No. 69, makes, with the specific Germania insurance of $1,000, a total insurance on No. 69 of $3,000, which would pro rate the loss between the Rochester and the Germania $985.16 to the Rochester and $492.37 to the Germania. The payment of the Rochester's $985.16, being its share of the loss on No. 69, would reduce the face value of its policy to $1,014.84, leaving that amount still applicable on No. 71 to pro rate with the specific policy of $1,000 on that number. The loss on that number was $283.20, which would be apportioned between the two companies as follows: $142.64 to the Rochester and $140.56 to the Germania. The Rochester's total loss would be on both numbers $1,127.80, and the Germania's total loss on both numbers would be $633.13, together aggregating $1,760.93, the total loss of the assured.

This would call for a judgment against the defendant in favor of the plaintiff in the present case for $633.13, with interest from May 23d, 1909.

The result is that the judgment of the court below will be reversed and a *venire do novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, JJ.    12.