**INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania Corporation, Plaintiff,**

v.

**AMERICAN HOME ASSURANCE COMPANY, a New York Corporation, Defendant.**

**Civ. A. No. C–5436.**

United States District Court,
D. Colorado.

April 17, 1975.

John R. Trigg, Yegge, Hall & Evans, Denver, Colo., for plaintiff.

Forrest S. Blunk, Blunk, Johnson & Allspach, Denver, Colo., for defendant.

## OPINION AND DECREE

CHILSON, District Judge.

Plaintiff, Insurance Company of North America (INA), seeks a declaratory judgment, under 28 U.S.C. § 2201, in order to resolve an apparent conflict between its insurance policy and defendant, American Home Assurance Company's (AHAC), policy. The case is to be determined upon stipulated facts which disclose the following:

At the time pertinent to this action, one Brooke Grant, a resident of Salt Lake City, Utah, owned a Cessna aircraft. On August 24, 1971, Glen B. Goodrich, Vice-President of IML Freight Lines, borrowed the Cessna with Grant's permission. Goodrich's purpose in borrowing the Cessna was to transport his mother from a Salt Lake City hospital to her home in Vernal, Utah, to go fishing with friends in Brown's Park, Utah, and to transact business for IML in Monticello, Utah. Goodrich paid no rent for the Cessna, but paid only for fuel used in making the trip.

After completing the three phases of the trip, Goodrich attempted to return to Salt Lake City from Monticello on August 25, 1971. Shortly after take off from the Monticello airport, the Cessna developed mechanical difficulties and crashed. As a result of the accident, Goodrich's passengers sustained certain injuries, the extent of which are not disclosed by the stipulated facts.

At the time of the accident, both INA and AHAC had policies of insurance covering the Cessna in full force and effect.

INA's policy, Exhibit B attached to the stipulated facts, was issued to IML Freight Lines, Inc., and provided "Single Limit Bodily Injury and Property Damage Liability" coverage in the

amount of $5,000,000.00 for described aircraft used for the purpose of "Private Business." Pursuant to the "Non-Ownership Liability Endorsement" coverage was extended to apply to aircraft not owned or leased by IML when operated by "any officer, or director of [IML] while acting within the scope of his duties as such." The endorsement also provided, in Paragraph 7, that:

"Except with respect to insurance purchased to apply in excess of the limit of liability hereunder, the insurance shall be excess insurance over any other valid and collectible insurance available to the named insured, either as an insured under a policy applicable with respect to the aircraft or otherwise, against a loss covered hereunder."

AHAC's policy, Exhibit A attached to the stipulated facts, was issued to Brooke Grant and provided $500,000.00 liability coverage for passenger injury when the Cessna was used for "Pleasure and business," and operated by any person with Grant's permission.

AHAC's policy also provided that, for purposes of this coverage,

"The unqualified word 'insured' wherever used includes not only the named insured but also any person while using the aircraft and any person or organization legally responsible for its use, provided the actual use is with permission of the named insured." AHAC policy at p. 2.

With respect to "other insurance", AHAC's policy provided, in pertinent part:

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss    . . . ."

INA, in its complaint, alleges that the injured passengers have made and continue to make claims against AHAC for the injuries they received in the accident. INA further alleges that AHAC "refused, and does continue to refuse, to come forward and perform their obligations" under their policy, "and do wrongfully continue to insist that [INA] come forward and make payments" under their policy.

The Court must determine, by construction of the above-quoted provisions, whether INA or AHAC is the primary insurer for purposes of the accident here involved.

■ Jurisdiction of this action is predicated upon diversity of citizenship, 28 U.S.C. § 1332. The parties have raised no choice of law issue. INA states in its brief that the question is moot, and that either the law of New York, Pennsylvania or Utah would be applicable. INA has not found, nor is this Court aware of, any precedent in Utah and asserts no preference as between New York and Pennsylvania. AHAC has not spoken to the issue at all. In these circumstances, the Court may assume "that the general rules of insurance law apply." St. Paul Mercury Insurance Co. v. Underwriters at Lloyds of London, 365 F.2d 659 (10th Cir. 1966).

The question before the Court involves the construction of two apparently inconsistent "other insurance" clauses in the parties' respective policies. INA's policy contains a so-called "excess" provision while AHAC's policy contains a so-called "pro-ration" provision. See generally, 8 Appleman, Insurance Law and Practice § 4914; Annot. 76 A.L.R.2d 502; Note, 65 Columbia L. Rev. 319 (1965).

■ The general rule, and the rule in this circuit, is that in a case involving the conflict between an "excess" clause and a "pro-ration" clause, the "excess" clause prevails and the primary obligation is imposed upon the pro-rata insurer. Fireman's Fund Insurance Co. v. Underwriters Insurance Co., 389 F.2d 767 (10th Cir. 1968). This rule is founded upon a desire to effectuate the intent of the parties insofar as it can be

determined from the language of the policies. AHAC's "pro-ration" provision requires for its application the existence of other "valid and collectible insurance" covering the same loss. As stated in the *Fireman's Fund* case, *supra,* insurance subject to an "excess" provision does not qualify as valid and collectible insurance within such a "pro-ration" provision.

■ AHAC argues, as did the defendant in the *Fireman's Fund* case, that rather than applying the general rule discussed above, the Court should apply the rule that the "other insurance" provisions are mutually repugnant and must therefore be disregarded, and liability should be apportioned between the companies. This argument was rejected by the 10th Circuit in *Fireman's Fund,* and should likewise be rejected here. Moreover, AHAC's proposed rule appears inapplicable in any event. The cases which purportedly support AHAC's position did not involve conflicts between "excess" and "pro-ration" provisions. See e. g., United States Fire Insurance Co. v. Insurance Co. of North America, 456 F.2d 1028 (8th Cir. 1972), aff'g, 328 F.Supp. 43 (E.D.Mo.1971) (identical provisions); State Farm Mutual Auto. Insurance Co. v. Travelers Indemnity Co., 433 F.2d 311 (10th Cir. 1970) (identical "excess" provisions); Oregon Auto. Insurance Co. v. United States Fidelity and Guaranty Co., 195 F.2d 958 (9th Cir. 1952) (policies with essentially identical provisions); Indiana Insurance Co. v. American Underwriters, Inc., 304 N.E.2d 783 (Indiana 1973) (conflict between "escape" provision and "excess" provision). The rationale employed in these decisions are inapplicable here, as the cases are distinguishable on their facts.

■ AHAC, in its answer, raises two additional claims by which it seeks to avoid responsibility under its policy.

First, AHAC claims that the passengers are subject to the Airplane Guest Statute in effect in Utah, the place of the accident. This assertion is immaterial to the question now under consideration. The applicability or inapplicability of the guest statute will bear only upon the ultimate question of liability if and when the passengers' claims are litigated.

Second, AHAC asserts that Goodrich was flying the aircraft as an agent for the Hercules Flying Club, and that coverage is thereby excluded. This assertion appears to be refuted by the stipulated facts filed herein, but, in any event, this issue again bears only upon the eventual liability of AHAC under its policy resulting from eventual litigation.

The only conclusion the Court need reach here is that AHAC is the primary insurer with respect to the accident here in question, and that it must perform its obligations to investigate, negotiate for settlement, defend any lawsuits which may arise from the accident, and pay any judgment within its policy limits, which may be entered against its insured.

It is therefore adjudged and decreed that the defendant, American Home Assurance Company is the primary insurer with respect to the accident previously referred to; that as the primary insurer, it is obligated to investigate, negotiate for settlement, defend any law suits which may arise from the accident, and pay any judgment within the policy limits which may be entered against its insureds; that the policy of insurance issued by the plaintiff herein is declared to be excess coverage to the coverage provided by the primary policy issued by the defendant; and that judgment enter in favor of the plaintiff and against the defendant for plaintiff's costs to be taxed by the Clerk of the Court upon the filing of a bill of costs.