Nancy R. JONES et al., Appellants,

v.

MEDOX, INC., et al., Appellees.

No. 79–433.

District of Columbia Court of Appeals.

Argued Nov. 20, 1979.

Decided April 1, 1980.

Ellen A. Patterson, Washington, D. C., with whom Gary W. Brown and James C. Gregg, Washington, D. C., were on the brief, for appellants.

Richard W. Galiher, Washington, D. C., for appellees.

Before GALLAGHER, MACK and PRYOR, Associate Judges.

PRYOR, Associate Judge:

Appellant contends that where two insurance companies have insured the same risk and the question of coverage arises, the insurance company with the excess "other insurance" clause should not be allowed to escape primary liability when the second insurance policy contains a pro rata "other insurance" clause. Rather, both insurance companies should shoulder a pro rata share of the liability. We agree and, therefore, reverse.

Nancy Jones, a nurse, was employed by Medox, Inc. which provides nursing personnel for hospitals and doctors in the Washington Metropolitan Area. While Ms. Jones was providing nursing services at Doctors Hospital, she treated Mark E. Howard. Later, Mr. Howard sued Ms. Jones, Doctors Hospital, and Medox for injuries which he allegedly received at Doctors Hospital. The case was settled out of court for the sum of $100,000.

Originally, three insurance companies were involved in this action. Ms. Jones was insured by Globe Insurance (hereinafter Globe). Doctors Hospital was covered by the Hartford Insurance Co. (hereinafter Hartford), and Medox, Inc. was insured by Insurance Company of North America (hereinafter INA). Because of conflicting clauses, primary liability could not be agreed upon at the time of settlement. However, the parties stipulated that Globe should pay the full $100,000 if the case could not be settled by March 1, 1978, and the insurance companies could then adjudicate their respective rights in court. The case did not settle by the above date. Accordingly, Globe paid the $100,000; Globe and Ms. Jones then sued Doctors Hospital, Hartford, Medox, Inc. and INA to obtain a pro rata share of the settlement expense from each.

The trial court dismissed the case against Doctors Hospital and Hartford. The issue in conflict narrowed to a dispute between INA and Globe over the proper interpretation of two clauses, one in the INA policy, and the other in the Globe policy. Both clauses were designated to limit liability and to apply to the situation where the insured event was also covered by another insurance company. Each of the clauses are common in the insurance industry and are called "other insurance" clauses.

The Globe policy contains a pro rata clause which states:

. . . [T]he company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss. .

The INA policy contains an excess clause which states:

[The] insurance provided by this policy shall be excess over any other valid and collectible insurance.

Faced with the conflict between the clauses, the trial court, citing *Employers' Liability*

*Assurance Corp., Ltd. v. Firemen's Fund Insurance Group*, 104 U.S.App.D.C. 350, 262 F.2d 239 (1958), gave effect to the excess clause and, thus, ruled that Globe was responsible for the entire $100,000.

The trial court relied upon *Employers' Liability Assurance Corp., Ltd. v. Firemen's Fund Insurance Group supra* ; but it should be noted that in that case the conflict was between two excess clauses. The conflict between an excess clause and a pro rata clause is a matter of first impression in this jurisdiction.

To resolve this question, most courts look to the excess clause and apply it. The result is that the insurer with the pro rata clause bears the total loss up to its policy limits.[1] If the liability exceeds the limits of the pro rata policy, then the excess policy pays the remainder. In essence, the courts have determined that the excess policy is not valid and collectible other insurance under the pro rata policy. The rationale frequently advanced for this rule is that it gives effect to the intent of the parties.

> [W]here an excess clause is inserted in a typical . . . liability insurance policy the usual intent of the insurer is that the policy will afford only *secondary* coverage when the loss is covered by 'other insurance.' On the other hand, a provision that limits a policy to only pro rata liability in the event of concurrent coverage usually is intended to become effective only when other valid and collectible *primary* insurance is available. [Note, *Concurrent Coverage in Automobile Insurance*, 65 Col.L.Rev. 319, 328 (1965) (emphasis in original).]

*See also* note 1, *supra.*

Critics claim that the majority position is anachronistic because the protection which "other insurance" clauses were created to provide is no longer necessary with respect to many insurable risks.

> The original reason for 'other insurance' clauses was to prevent overinsurance and double recovery under property and fire insurance policies. But since there is a greatly diminished risk of fraudulent claims under an automobile liability insurance policy, this original purpose of 'other insurance' clauses is of only slight importance. [*Werley v. United Services Automobile Association*, 498 P.2d 112, 116–117 (Alaska 1972).

*See also,* Comment, *"Other Insurance" Clauses: The Lamb-Weston Doctrine,* 47 Ore.L.Rev. 430 (1968). It seems clear that, at least initially, "other insurance" clauses have been utilized as a means of controlling abuses which could evolve from overinsurance or double recovery.

■ A growing number of jurisdictions have adopted[2] what is commonly known as

---

1. *P. L. Kanter Agency, Inc. v. Continental Cas. Co.*, 541 F.2d 519 (6th Cir. 1976); *Ins. Co. of N. America v. Am. Home Assurance Co.*, 391 F.Supp. 1097 (D.Colo.1975); *Greenbriar Shopping Center, Inc. v. Lorne Co.*, 310 F.Supp. 303 (N.D.Ga.1969), aff'd, 424 F.2d 544 (5th Cir. 1970); *State Farm Mut. Auto. Ins. Co. v. Am. Cas. Co.*, 433 F.2d 1007 (8th Cir. 1970); *Priester v. Vigilant Ins. Co.*, 268 F.Supp. 156 (S.D. Iowa 1967); *Henderson v. Selective Ins. Co.*, 242 F.Supp. 48 (W.D.Ky.1965), aff'd, 369 F.2d 143 (6th Cir. 1966); *State Farm Mut. Auto. Ins. Co. v. Gen. Mut. Ins. Co.*, 282 Ala. 212, 210 So.2d 688 (1968); *Employers Reinsurance v. Mission Equities Corp.*, 74 Cal.3d 826, 141 Cal. Rptr. 727 (1977); *Demshar v. AAACon Auto Transport, Inc.*, 337 So.2d 963 (Fla.1976); *Allied Mut. Ins. Co. v. Farm Bureau Mut. Ins. Co.*, 257 Iowa 100, 131 N.W.2d 798 (1964); *Ryder Truck Rental Inc. v. Schapiro & Whitehouse, Inc.*, 259 Md. 354, 269 A.2d 826 (1970); *Atlantic Mut. Ins. Co. v. Continental Nat'l Am. Ins. Co.*, 123 N.J.Super. 241, 302 A.2d 177 (1973); *Groth v. Farmers Mut. Auto. Ins. Co.*, 21 Wis.2d 655, 124 N.W.2d 606 (1963).

2. *Allstate Ins. Co. v. Am. Underwriters, Inc.*, 312 F.Supp. 1386 (N.D.Ind.1970); *Werley v. United Servs. Auto. Ass'n*, 498 P.2d 112 (Alaska 1972); *Universal Underwriters Ins. Co. v. Dairyland Mut. Ins. Co.*, 5 Ariz.App. 296, 425 P.2d 866, vacated, 102 Ariz. 518, 433 P.2d 966 (1967); *Sloviaczek v. Estate of Puckett*, 98 Idaho 371, 565 P.2d 564 (1977); *Travelers Ins. Co. v. Lopez*, 567 P.2d 471 (Nev.1977).

the *Lamb-Weston* rule [3] to resolve conflicts between "other insurance" clauses. Although these courts represent a distinct minority, their view offers a viable alternative to the majority rule. The *Lamb-Weston* rule provides that where "other insurance" clauses conflict, the clauses are mutually repugnant and both must be rejected, the result being that the liability is prorated among the insurers.

The proponents of the *Lamb-Weston* rule have offered several reasons for rejecting the majority approach and embracing the minority view:

It does not arbitrarily pick one of the conflicting clauses and give effect to it; it does not deprive the insured of any coverage; it is not prejudicial in giving a windfall to one insurer at the expense of another; it does not encourage litigation between insurers. It does not delay settlements. On the other hand, it does enable underwriters to predict the losses of the insurers more accurately: it does preclude the use of illogical rules developed by the courts (e. g., first in time, specific v. general and primary tort-feasor doctrines); and it does give a basis for uniformity of result. In addition, prorating the loss among all insurers is a rule that can be applied regardless of the number of insurers involved and regardless of the type of conflicts that are created by the "other insurance" clauses. Finally, the rule is simpler, more convenient, and easier to apply than the majority rule. [Note, *Conflicts Between "Other Insurance" Clauses in Automobile Liability Policies*, 20 Hastings L.J. 1292, 1304 (1969) cited in *Werley v. United Services Automobile Association, supra* ].

Having reviewed the alternatives, we conclude that the *Lamb-Weston* rule is the better rule. It is a balanced approach to a complicated problem and encourages an equitable, uniform result. It is unfair to

allow one insurance company to escape liability solely because its "other insurance" clause is superior to the second insurance company's clause. Presently, the rules used to determine the superiority of one clause over another are sometimes confusing and often place the insured in an untenable position.

This court believes it is good public policy not to put an injured plaintiff, or a defendant who is fortunate enough to have duplicate coverages, in a position where there is any possibility one insurer can say, "After you, my dear Alphonse!" while the other says, "Oh, no, after you my dear Gaston." They must walk arm in arm through the door of responsibility. [*Firemen's Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 243 Or. 10, 15, 411 P.2d 271, 274 (1966).]

Thus, where the insurance companies have insured the same risk and the event triggering insurance liability occurs, the insurance company with the excess "other insurance" clause cannot escape primary liability when the second insurance policy contains a pro rata "other insurance" clause. The clauses are mutually repugnant and must be rejected totally. Both insurance companies must shoulder a pro rata share of the liability.[4]

*Reversed and remanded.*

GALLAGHER, Associate Judge, dissenting:

The majority opinion in this case rests on the premise that the clauses in the respective insurance policies necessarily conflict and that the court must therefore affirmatively intervene to resolve this conflict. I disagree.

This case originated in a malpractice action arising out of injuries allegedly sustained from an injection administered by Nancy Jones, a nurse, at Doctors Hospital. Defendants in the action were Ms. Jones, the hospital, and Ms. Jones' employer, Me-

---

3. *Lamb-Weston, Inc. v. Oregon Auto. Ins. Co.*, 219 Or. 110, 341 P.2d 110 (1959).

4. See note 2, *supra*.

dox, Inc., a corporation which provides temporary medical personnel to local doctors and hospitals. The case was settled for $100,000 pursuant to a settlement agreement which provided that the insurance companies representing all defendants would litigate separately their respective liabilities. In the event that this litigation was not concluded by March 1, 1978, the agreement provided further that Ms. Jones' insurer, Globe Indemnity Co., would pay the full amount of the settlement with no prejudice to its rights.

The insurers' liabilities were not adjudicated by the agreed date. Globe therefore paid the full amount of the settlement. Globe and Ms. Jones then brought an action against the hospital and its insurer, Hartford Insurance Co., and Medox and its insurer, Insurance Company of North America (INA). The trial court granted summary judgment to the hospital, Hartford Insurance Co., Medox and INA, and dismissed the claim of Ms. Jones and Globe, thus ruling that Globe should bear the entire cost of the settlement. Ms. Jones and Globe have appealed the dismissal of their claim and the denial of their Motions for Summary Judgment against Medox and INA.

At the time of the injection, Ms. Jones was the sole insured under the Globe policy. This policy had a $1,000,000 limit of liability and contained a pro rata "other insurance" clause which provided:

> If the insured has other insurance against a loss covered by this policy . . . the company shall not be liable under this policy for a greater proportion of such

loss than the applicable limit of liability . . . bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

Ms. Jones was also covered under a provision of Medox's INA policy by which INA contracted with Medox to pay liabilities incurred under state circumstances by Medox's employees and contractors. The applicable limit of liability in the INA policy was also $1,000,000 and the policy contained an "excess other insurance" clause which provided:

> The insurance afforded [by this policy] shall be excess insurance over any other valid and collectible insurance.

(Hereinafter INA's blanket excess clause.) [1]

Globe's pro rata clause and INA's blanket excess clause are not in conflict, as I read them. Globe's provision contemplates contribution from all other valid and collectible insurance. INA is *not* collectible insurance for this purpose because INA's blanket excess clause expressly states that it *will not* pay if the claim is covered by any other valid and collectible insurance (up to the policy limit). Globe *is* collectible insurance under INA's clause because it states that it *will* pay the claim in any event (subject to any applicable pro rata contribution).[2] Thus, applied together, the two policies result in Globe being liable for any claim up to its policy limit, with INA picking up any excess.

Critics of this approach to interpretation of insurance contracts have argued that it requires a circularity of reasoning, and that the decision will depend on which contract is read first. *See, e. g., Oregon Automobile*

---

1. INA's policy contained another "excess other insurance" clause which stated that the benefits of the policy were intended to be in excess of other insurance available to "the insured." The policy defined "the insured" as Medox or certain of its principals. Both the trial court and the parties on appeal devoted a great deal of attention to the question of whether Ms. Jones was "the insured" for the purpose of applying the excess provisions of INA's "other insurance" clause. The blanket excess clause overrides these provisions, however, and

makes resolution of this problem unnecessary. Apparently INA did not rely on its blanket excess clause at trial, although it is in the record.

2. The determination of what is or is not valid and collectible insurance should not be made in the abstract, but must be based on a consideration of all the facts and circumstances, including the existence and terms of additional policies.

Insurance Co. v. United States Fidelity and Guaranty Co., 195 F.2d 958, 960 (9th Cir. 1952); Werley v. United Services Automobile Association, 498 P.2d 112, 117 (Alaska 1972); Note, 38 Minn.L.Rev. 838, 852 (1954). In response to the problem, the majority adopts the Lamb-Weston rule, which takes the position that all "other insurance" clauses, regardless of their nature, are mutually repugnant, requiring proration.[3] Lamb-Weston, Inc. v. Oregon Automobile Insurance Co., 219 Or. 110, 128, 341 P.2d 110, 119 (1959). This rule presents an appealingly simple and no-nonsense way to deal with the vagaries of insurance policies. In applying it, however, the court must sweep away the contractual language, and perhaps the negotiated intent of the parties. Effectually, the court is legislating manda-

tory pro rata clauses for insurance policies having "other insurance" provisions. I think the court should take such action only when presented with clearly irreconcilable provisions[4] and perhaps, when insurers come to court seeking to avoid all liability.

The problem of circularity arises only when each insurer, claiming that the other must pay first, declines to pay at all. Smith v. Pacific Automobile Insurance Co., 240 Or. 167, 400 P.2d 512 (1965). See Firemen's Insurance Co. v. St. Paul Fire and Marine Insurance Co., 243 Or. 10, 15, 411 P.2d 271, 274 (1966). This is not the case here.[5] The fact that the clauses are designed to limit liability, which the majority finds objectionable, is relevant only where the covered person may be deprived of coverage.[6] Thus, keeping in mind the rights of

---

**3.** Lamb-Weston presents a somewhat similar fact situation, involving a tort defendant whose agent was involved in an accident while driving a rented truck. The contending insurance companies were those of the tort defendant and of the lessor of the truck. The lessor's insurance contained an "omnibus" clause extending coverage to authorized lessee drivers. The postures of the insurance companies were opposite to those in this case, the tort defendant's policy containing the excess clause and the lessor's policy containing the pro rata clause. The court's decision appears to be grounded in frustration with numerous and difficult-to-apply rules and a generalized annoyance with insurance companies' attempts to escape liability. One commentator has asserted:

> An analysis of the out-of-state cases relied upon by [the Lamb-Weston court] leads one to the conclusion that although some of the language employed therein supports the decision in Lamb-Weston, neither the actual reasonings applied nor the holdings nor both together do. Each case either applies the rationale of the majority position or reaches a result entirely consistent with that rationale. Comment, "Other Insurance" Clauses: The Lamb-Weston Doctrine, 47 Ore.L.Rev. 430, 437 (1968).

**4.** Indeed, the Oregon court itself, subsequent to Lamb-Weston, has stated its theoretical agreement with such an analysis:

> There are decisions to the effect that the policy containing the pro-rata clause should always bear the whole loss when the other Policy contains an excess clause. However, when the two contracts are compared in such cases, the other-insurance clauses frequently

are not held to be repugnant. But when repugnancy cannot be resolved by reference to the contracts, the case is a proper case for the equitable rule set forth in Lamb-Weston. Liberty Mutual Ins. Co. v. Truck Ins. Exch., 245 Or. 30, 39, 420 P.2d 66, 70–71 (1966). [Citations and footnote omitted. Emphasis supplied.]

The court nevertheless held to its Lamb-Weston view that the pro rata and excess clauses before it were, in fact, irreconcilably repugnant.

**5.** Cf. Sloviaczek v. Estate of Puckett, 98 Idaho 371, 376, 565 P.2d 564, 569 (1977) (McFadden, C. J., dissenting) (case involving escape clauses, see note 6, infra.)

> It is not denied by the majority or the parties that the "other insurance" provisions were agreed upon by the parties; there is no allegation of fraud or deceit, or any contention of unequal bargaining power resulting in unconscionability.
>
> This circularity is not repugnant. It is true that if all provisions are taken together, all compensation would be denied. If so interpreted, the result might be repugnant. However, neither of the insurance companies party to the suit contend that such an interpretation should be given to the various provisions.

**6.** In several cases relied on by the majority, the court applied the Lamb-Weston rule to enable the plaintiff to recover additional amounts under the policies. See e. g., Sloviaczek v. Estate of Puckett, supra; Travelers Ins. Co. v. Lopez, 567 P.2d 471 (Nev.1977); Werley v. United Ser. Auto. Ass'n, supra. In fact, in Sloviaczek and Werley, the courts were faced with essentially

all the parties, "we can resolve the difficulty of circular 'other insurance' provisions without totally disregarding all such provisions. There is nothing repugnant in such an approach, and certainly this court cannot justify appellate disregard for a valid contract by labeling the provisions of those contracts 'repugnant.'" *Sloviaczek v. Estate of Puckett*, 98 Idaho 371, 377, 565 P.2d 564, 570 (1977) (McFadden, C. J., dissenting).

The majority opinion is couched in equity considerations and a concern lest one insurance company be allowed to "escape liability" because of "superior" drafting. The underlying rationale apparently is that two companies covering the same risk should pay equally. The companies have no contractual relationship with each other, however, and hardly need to be protected from each other. Furthermore, neither conferred a benefit on the other nor relied on the other's existence. Globe is not getting "stuck" for anything more than it contracted for with Ms. Jones. INA, on the other hand, had no direct contractual relationship with Ms. Jones. Its coverage extended to her, as a kind of employee benefit, because of the contract between INA and Medox. I doubt the court should be quick to sweep away the clear language of that contract without at least knowing to what extent Medox negotiated for and intended to create only secondary coverage for its employees/contractors, and to what extent that intention may have affected the policy rates.[7] "Questions of contribution between coinsurers have caused much trouble to the courts, a large part of which has arisen through efforts to equalize equities outside of the contract. This trouble is lessened if the parties are left with their contracts as

they themselves have made them." *Grollimund v. Germania Fire Insurance Co.*, 82 N.J.L. 618, 621, 83 A. 1108, 1109 (E&A 1912), *quoted in Citizens Mutual Automobile Insurance Co. v. Liberty Mutual Insurance Co.*, 273 F.2d 189 (6th Cir. 1969) *and in American Surety Co. of New York v. American Indemnity Co.*, 8 N.J.Super. 343, 72 A.2d 798 (Ch.Div.1950).

Although the minority rule has some appeal in cases of truly conflicting provisions, I am not persuaded that it is logically defensible on these facts. I would affirm.

---

identical escape-type clauses which provided excess coverage only in the amount by which the limit of liability of each exceeded the limit of liability of the other. Such clauses are frequently disfavored by the courts. Russ, *The Double Insurance Problem—A Proposal*, 13 Hastings L.J. 183, 191 (1961).

**7.** It has been suggested that the adoption of the *Lamb-Weston* rule has in fact increased the cost of processing claims, as insurers may not now comfortably rely on their other insurance clauses, but must routinely prepare for liability by investigating all claims. Comment, *"Other Insurance" Clauses, The Lamb-Weston Doctrine, supra* at 445.