RYDER TRUCK RENTAL, INC. ET AL. *v.* SCHA-
PIRO & WHITEHOUSE, INC., to its own use
and to the use of Aetna Casualty & Surety
Company

[No. 64, September Term, 1970.]

*Decided October 21, 1970.*

*Motion for rehearing filed November 17, 1970; denied
and opinion modified December 7, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*Thomas G. Andrew,* with whom were *Rollins, Smalkin, Weston & Andrew* on the brief, for appellants.

*H. Thomas Howell* and *David M. Buffington,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellees.

MCWILLIAMS, J., delivered the opinion of the Court.

The facts of this case are simple enough but they are extraordinary in that they are apt never to recur in quite the same configuration. They have brought into conflict the virtually identical "other insurance" clauses of two automobile liability insurance policies. The generally accepted notion that this is a somewhat untidy area of the law has been succinctly articulated in 38 Minn. L. Rev. 838, 841 (1954) :

"Despite efforts by insurance counsel to draft explicit and litigation-proof terms in liability policies, especially in the 'other insurance' area, litigation is all too frequently necessary to determine to what extent, if at all, each insurer must contribute in a double coverage case. The cause of litigation is not so often the ambiguity of the drafted policy in reference to the existence of other insurance as the conflicting clauses of the two applicable policies. Judicial interpretation of the conflicting clauses has not been uniform enough as yet to allow safe prediction of a certain result. Not only have interpretations of

the 'other insurance' clauses not been standard, but also the courts are not in agreement as to whether the 'other insurance' clauses ought to be the only controlling factors involved.

"The main approaches used by the courts to resolve the problem of the conflicting 'other insurance' clauses are four in number. They include: (1) holding the more specific insurer liable to the exclusion of the more general insurer; (2) holding the insurer of the primary tortfeasor primarily liable; (3) applying the 'other insurance' clause contained in that policy issued subsequent to the other policy; and (4) interpreting the clauses of the respective policies."

We shall approach the resolution of the problem now before us by undertaking to interpret the language of the two policies. Such an approach seems to be required by our holding in *Consolidated Mutual Ins. Co. v. Bankers Insurance Co. of Pennsylvania*, 244 Md. 392 (1966). In that case Judge Barnes, for the Court, said:

"In cases where two or more of the 'other insurance' clauses conflict, most courts resolve the problem of double coverage by attempting to reconcile conflicting clauses. This Court has followed this approach. *Celina Mutual Casualty Co. v. Citizens Casualty Co.*, 194 Md. 236, 71 A. 2d 20, 21 A.L.R.2d 605 (1949); *Citizens Casualty Co. of N. Y. v. Allied Mutual Ins. Co.*, 217 Md. 494, 144 A. 2d 73 (1958); *Zurich Insurance Co. v. Continental Casualty Co.*, 239 Md. 421, 212 A. 2d 96 (1964). This approach recognizes that the rights and liabilities of the different insurers involved should depend, as far as possible, upon the specific language of the policies. The relative liabilities of the insurers are contingent, in each case, upon the characterization of the 'other insurance' provisions as

escape clauses, excess clauses or pro-rata clauses."
*Id.* at 396.

As we entered the "Soaring Sixties" Schapiro and Whitehouse, Inc. (Schapiro), owned three open flatbed trailers, two tractors, and one "regular heavy duty truck" all of which were used exclusively in the conduct of its rag business. The vehicles were insured by a policy issued by Aetna Casualty & Surety Company (Aetna) which provided, among other things, as follows:

"I. COVERAGE A — BODILY INJURY LIABILITY—AUTOMOBILE:
To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile.
"COVERAGE B — PROPERTY DAMAGE LIABILITY—AUTOMOBILE:
To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of any automobile."

\* \* \*

"The unqualified word 'Insured' includes the named Insured and also includes (1) \* \* \* and (2) under Coverages A and B, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named Insured or with his permission, \* \* \*. The insurance with respect to any person or organization other than the named Insured does not apply under division (2) of this insuring agreement:

(a) with respect to an automobile while used with any trailer owned or hired by the Insured and not covered by like insurance in the Company; or with respect to a trailer while used with any automobile owned or hired by the Insured and not covered by like insurance in the Company;

\* \* \*

(d) with respect to any hired automobile, to the owner, or a lessee thereof other than the named Insured, or to any agent or employee of such owner or lessee;"

Having decided in 1961 that it was better to rent tractors than to own them, Schapiro sold the two tractors and the truck. In April of that year it rented a tractor from Ryder Truck Rental, Inc. (Ryder). Ryder agreed to "supply $100,000 property damage, $250,000/$500,000 public liability, fire, theft, comprehensive, and $100 deductible collision insurance." Compliance with its obligation in this regard was accomplished by a comprehensive liability policy issued by Liberty Mutual Insurance Company (Liberty), the pertinent provisions of which were as follows:

"It is agreed that such insurance as is afforded by the policy for bodily injury liability under Coverage A and for property damage liability under Coverage B applies to any one or more persons or organizations, leasing an automobile from any named insured listed in the schedule below, subject to the following provisions:

\* \* \*

4. The insurance afforded to such lessee applies only to the maintenance or use of (1) the automobile so leased and (2) trailers owned by the lessee or for which he is legally liable, but only while any such trailer is attached to the leased automobile referred to in part (1) of this subparagraph.

5. If the subject of any such leasing agreement is a trailer, no insurance is afforded any lessee while such trailer remains attached to any automobile for which there is no insurance under this endorsement."

Both Aetna's policy and Liberty's policy contained the following provisions:

"(b) Automobile. Except where stated to the contrary, the word 'automobile' means a land motor vehicle or trailer as follows:

(1) Owned Automobile — an automobile owned by the named Insured;

(2) Hired Automobile—an automobile used under contract in behalf of, or loaned to, the named Insured provided such automobile is not owned by or registered in the name of (a) the named Insured or (b) an executive officer thereof or (c) an employee or agent of the named Insured who is granted an operating allowance of any sort for the use of such automobile;

(3) Non-Owned Automobile—any other automobile."

"Other Insurance—If the Insured has other insurance against a loss covered by this policy the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a 'cost of hire' basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

On 11 May 1961 Wilbert Lee Cameron (Cameron), an employee of Schapiro, was driving the Ryder tractor, to which was attached one of Schapiro's trailers, north on the Reisterstown Road, in Baltimore County. Near Mount Wilson Lane the tractor-trailer combination collided with a Baltimore Transit Company bus. Several passengers, including Hazel Boulware, were injured and, of course, the bus was damaged.

Ryder and Liberty refused to protect and defend Schapiro and Cameron from the numerous claims filed against them. Aetna thereupon undertook to settle and did settle all of the claims except that of Hazel Boulware who thereafter filed suit in the Circuit Court for Baltimore County. The trial of her case in the fall of 1963 resulted in a judgment of $10,610 against Schapiro alone and judgments in favor of Ryder and Cameron for costs. Aetna expended $27,576.13, including the payment of the Boulware judgment, in settling all of the claims arising out of the collision. It is agreed that this amount, which also includes counsel fees, is fair and reasonable. It appears to be conceded, also, that the proximate cause of the accident was Schapiro's negligence in the maintenance of the brakes on its trailer and that both Ryder and Cameron were free of any negligence.

In May 1964 Aetna sued Liberty to recover the $27,-576.13. Schapiro is a nominal plaintiff; Ryder is a nominal defendant. For reasons unknown to us the case was not tried until September 1969. In a long and comprehensive opinion the trial judge, O'Donnell, J., concluded that Liberty must pay Aetna $27,576.13. Judgment in that amount was made absolute on 10 February 1970. Liberty's appeal to this Court was timely.

The parties concede, as Judge O'Donnell found, that Schapiro was covered by Aetna's policy even though its trailer was attached to Ryder's tractor and that Schapiro was covered by Liberty's policy also despite the fact that the hired tractor was coupled to the trailer insured by Aetna. Although without significance here there is a further concession that, absent Aetna's coverage of the

trailer, the clause in the Liberty policy, quoted above, would have provided Schapiro with coverage against the losses resulting from the accident.

The problem in the case at bar arises out of the pervasive nature of the "other insurance" clauses which, if effective, would make each insurer liable for excess coverage only.[1] It will be noted that each clause has two parts. The first, up to the semicolon, is the standard pro rata provision; the second, the proviso segment, provides for excess coverage under certain conditions.

Aetna contends that since Liberty is providing "other insurance" the (other insurance) clause in its policy becomes operative. Moreover, it argues, since the loss arose "out of the use of a hired automobile" (the tractor), the proviso segment comes into effect. Under the terms of its policy, then, says Aetna, it is an excess insurer only. Aetna admits, of course, that on its face its policy is "other insurance" in respect of the Liberty policy, thus making the Liberty "other insurance" clause potentially effective. But, argues Aetna, while the accident *may* be said to have arisen out of the *maintenance* of the trailer, it did not arise out of the *use* of the trailer, but rather out of the use of the tractor; since the tractor is not a "non-owned automobile" nor is the trailer a "hired automobile" under the Liberty policy, the accident did not "arise out of the maintenance of a hired automobile" nor out of the "use of a non-owned automobile." The net effect, says Aetna, is that the excess clause in the Liberty policy is inoperative, leaving Liberty only the pro rata segment of its "other insurance" clause. Finally, Aetna argues, and with this we agree, when a pro rata clause clashes with an excess clause, the excess insurance is not "other insurance" as to the other (Liberty) policy and, in these circumstances, its pro rata clause makes it the primary

---

1. Since excess insurance provisions are mutually repugnant and as against each other are impossible of accomplishment, it has been argued that in such a situation neither insurer ought to be held liable, but since the acceptance of such a notion would leave the insured without coverage, no court seems to have been persuaded by the argument.

insurer up to the limits of its policy. *Consolidated Insurance Co. v. Bankers Insurance Co. of Pennsylvania,* 244 Md. 392 (1966) ; *American Surety Co. of N.Y. v. Canal Insurance Co.,* 258 F. 2d 934 (4th Cir. 1958). The trial court agreed with Aetna's contentions.

Liberty argues that Schapiro, as the insured proximately responsible for the accident, must look first to its own insurer (Aetna) for coverage. This, known as the "prime tortfeasor theory," is not generally accepted, and, in the circumstances, we find it equally unacceptable. Liberty argues also that the accident did "arise out of the use" of the trailer, which it insists was a non-owned automobile under its policy. And so, concludes Liberty, its "other insurance" clause, especially the excess provision, is fully operative.

Judge O'Donnell observed, correctly we think, that

> "[i]f the accident had arisen out of the use of
> * * * [the] trailer while not attached to * * *
> [Ryder's] tractor then it could be said that the
> loss arose out of the use of a 'non-owned' automobile."

Then he declared, apparently assuming it to be beyond dispute :

> "The identity of the trailer as a single 'non-owned automobile' disappeared during the time it was attached to and indeed was operated in conjunction with the leased tractor—an 'owned automobile' of Ryder * * *."

Thus he was able to conclude :

> "Since the accident arose out of the use of the hired tractor of Ryder Truck Rental and arose out of the use of the tractor-trailer unit, the coverage under the 'other insurance' provision in Aetna's policy must be considered excess insurance over any other valid and collectible insurance. Since the loss did not arise out

of the use of any 'hired automobile' or the use of any 'non-owned automobile' (the tractor-trailer unit) the coverage under Liberty's policy must be considered primary."

We do not agree with Judge O'Donnell that the identity of the trailer "disappeared" during the time it was attached to the tractor. Both policies define "owned automobile" (which includes "trailer") as "an automobile owned by the named insured." Code (1957), Art. 66½, § 2 (a) (32), defined owner as "any person, firm or corporation owning a vehicle or having the exclusive use thereof, under contract of purchase, lease, hiring or rental thereof, or otherwise." Under this definition, while Schapiro may be said to have "owned" the tractor, Ryder surely did not "own" the trailer. It had no proprietary interest in it. Code (1957), Art. 66½, § 23, required trailers to be separately licensed and they were separately taxed. The tractor and trailer did not always operate as a unit and they were registered in the names of completely different parties. It seems entirely clear that Schapiro "owned" the trailer; indeed Judge O'Donnell agrees. But we see no basis for saying that Schapiro's property suddenly became Ryder's property simply because, as it moved over the highway, it was hitched to Ryder's tractor. Neither do we see any basis for saying that "the tractor-trailer unit" was an automobile "owned" by Ryder. One might say that a *part* of it was owned by Ryder or that "in a sense," or in a different context, ownership of the trailer would have to be attributed to Ryder, but in the circumstances of the case at bar it is not owned by Ryder and under the terms of Liberty's policy it must be a "non-owned" automobile.

Judge O'Donnell in his opinion devoted considerable lineage to the notion that the accident arose out of the use of the tractor. He said, in part:

"The term 'use' is broader than the term 'operation.' Causal connection of the 'use' is not always essential * * *."

\* \* \*

"The words 'arising out of' when used in such a provision in a policy are of broader significance than the words 'caused by' and are ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle. See Appleman, op. cit., Vol. 7, § 4317, citing *Red Ball Motor Freight v. Employers' Mut. Liability Ins. Co. of Wis.*, 189 Fed. 2d 374 (1951) (C.C.A., Tex.). Notwithstanding the finding that the negligent maintenance of the trailer's brakes was the cause of the resultant injuries and damages, the accident arose out of the 'use' of the White tractor while coupled with the trailer. The 'cause' of the accident is not determinative in fixing coverage since the accident and resultant loss arose out of the 'use' of the 'hired automobile.' "

We agree that the accident did arise out of the use of the tractor but our doing so surely does not compel us to forget about the trailer and in this regard we find inappropriate the judicial prestidigitation Judge O'Donnell employed to make the trailer disappear into the tractor. We cannot close our eyes to the simple and inescapable fact that the accident arose out of the use of *both* the tractor and Schapiro's negligently maintained trailer nor can we think of any reason why the one must exclude the other. We hold, therefore, in respect of Liberty's policy, that the accident arose "out of the use of a non-owned automobile." The immediate result of our holding, of course, is to make Liberty's excess clause fully operative. Since Aetna's excess clause is also operative a question is presented which, until now, we seem never to have considered.

We have not found any case presenting a genuine, clear-cut conflict of excess clauses, in which the court did not require some kind of proration of the loss between the insurers involved.[2] Since we too think Liberty and Aetna

---

2. Some courts have applied mechanical tests which prefer the specific over the general insurer, the tortfeasor over the innocent party, the owner over the lessee, and the prior over the later in-

should share the loss we must now determine the amount each should pay. We find the New Jersey court's approach to a similar problem to be most persuasive and singularly applicable to the instant case. We shall follow it and require the loss to be shared equally. In *Cosmopolitan Mutual Ins. Co. v. Continental Casualty Co.*, 28 N. J. 554, 147 A. 2d 529, 69 A.L.R.2d 1115 (1959), that court said:

"Having concluded that the plaintiff and the defendant should share in the amount of the settlement and expenses, the remaining question is what portion of that total each must bear. Continental argues that the parties should pro-rate their liability on the basis of the limits of liability of each policy. Neither policy expressly provides for this type of pro-rating where a hired or non-owned vehicle is involved. Cosmopolitan's policy provides for prorating in other circumstances. Continental's policy has no such provision in any case. It is commonly known that the cost of liability insurance does not increase proportionately with the policy limits. The cost of increased limits is relatively small when compared to the cost of minimum coverage. The manner of contribution urged by Continental has recently been rejected. Insurance Co. of Texas v. Employers Liability Assur. Corp. 163 F. Supp. 143 (D.C.S.D. Cal. 1958). In that case the court

surer. *See Cosmopolitan Mutual Ins. Co. v. Continental Cas. Co.*, 28 N. J. 554, 147 A. 2d 529, 69 A.L.R.2d 1115 (1959) and cases cited therein; 38 Minn. L. Rev. 838 (1954). A brief review of cases representing these views leads us to conclude that few if any involve the true excess-excess conflict facing us. Aetna argues that this case falls within the rule that as between an owner of an automobile insured with an omnibus clause and driver, whose policy covers the use of non-owned vehicles, the owner's insurer must pay when his insurance has an "other insurance" clause and the driver's insurance is "excess only" with respect to non-owned vehicles. The cases and the writers support such a rule. *American Surety Co. of N.Y. v. Canal Ins. Co.*, 258 F. 2d 934 (4th Cir. 1958) ; *General Ins. Co. of America v. Western Fire & Casualty Co.*, 241 F. 2d 289 (5th Cir. 1957) ; 8 Appleman, *Insurance Law & Practice*, § 4914 at 400. But the instant case does not involve the clear cut owner-non-owner distinction. It involves policies where two "non-owner" excess clauses are in direct conflict and the above rule has no application.

pro-rated liability according to the premiums paid the respective companies. Although this latter test initially commends itself, upon reflection it appears that unless the insureds are in identical circumstances, there are too many variables affecting the premiums to permit them to form an adequate basis for an equitable adjustment, e.g., fleet insurance. We therefore conclude that as both companies stand on an equal footing equity requires an equal apportionment of the amount of the settlement and expenses. The judgment will accordingly be modified so as to require Continental to pay one-half of the settlement and expenses." 147 A. 2d at 534.

See also Ruan Transport Corp. v. Truck Rentals, Inc., 278 F. Supp. 692 (D. Col. 1968) ; Nationwide Mutual Ins. Co. v. State Farm Mut. Auto. Ins. Co., 209 F. Supp. 83 (N.D. W.Va. 1962) ; Peterson v. Armstrong, 176 So. 2d 453, writ refused 248 La. 369, 178 So. 2d 658, and writ refused 248 La. 370, 178 So. 2d 658 (La. App. 1965) ; Hartford Accident & Indemnity Co. v. Selected Risks Indemnity Co., 65 N.J.Super. 328, 167 A. 2d 821 (1961).[3]

There remains to be dealt with one small problem which will best be stated by the following excerpt from Judge O'Donnell's opinion:

---

3. We are well aware of the fact that of the jurisdictions which have faced similar problems the majority have prorated the loss according to the limits of the respective policies. We have rejected that view because we think the minority view, as expressed in Cosmopolitan Mutual Ins. Co. v. Continental Casualty Co., 28 N. J. 554, 147 A. 2d 529, 69 A.L.R.2d 1115 (1959), and in the other cases we have cited, represents better reasoning. We agree with the New Jersey court that, while the policies compel proration according to policy limits in some "other insurance" situations, there is no such compulsion when the loss arises from the use of "hired" or "non-owned" automobiles. That the operative excess clauses are mutually repugnant does not obliterate the fact that the conditions which brought those clauses into play still exist. We think additional support for our alignment with the minority view is provided by Ruan Transport Corp. v. Truck Rentals, Inc., 278 F. Supp. 692 (D. Col. 1968), in which the court held that an even split is the more equitable approach. We do not think the relationship between an insurer's total potential liability and his obligation to pay a given loss (for which he would have been fully liable but for the existence of the other insurer) is especially relevant, let alone sacrosanct, as some courts seem to believe. We prefer to

"It thus appears that independent of any obligation or responsibility to defend Schapiro and Whitehouse, Liberty—because of allegation of potential liability on Cameron's part—was obligated to defend him, an 'Insured' under its policy and not an 'Insured' under Aetna's policy.

"Liberty, by failing to defend Cameron in the *Boulware* case, breached its obligation to defend him as an 'Insured' under its policy and is liable, under the Second Count in the Declaration, at least in the amount of $865, the counsel fee paid to Lord, Whip Coughlin and Green (the amount being stipulated)."

Neither side made any point of this and there seems to be no reason why we should disturb Judge O'Donnell's ruling in this regard.

For all that has been said the judgment will be reversed and, pursuant to Maryland Rule 875 a, we shall enter judgment for Aetna against Liberty for $14,220.-57 (½ of $27,576.13 + ½ of $865). The costs here and in the court below to be paid one-half by Liberty and one-half by Aetna.

> *Judgment reversed.*
> *Judgment entered in favor of the appellees against the appellants for $14,220.57.*
> *The costs below and in this Court to be paid ½ by the appellants and ½ by the appellees.*

---

join the growing number of courts which "recognize that the minority approach is more equitable and reasonable." *Ruan, supra* at 696. *See also State Farm Mut. Auto. Ins. Co. v. Travelers Indem. Co.,* 301 F. Supp. 1131 (D. Col. 1969) ; *Continental Casualty Co. v. Travelers Ins. Co.,* 84 Ill. App. 200, 228 N.E.2d 141, 145 (1967) ; *State Farm Mut. Auto. Ins. Co. v. Union Ins.,* 181 Neb. 253, 147 N.W.2d 760 (1967). *Cf., Employers Mutual Casualty Co. v. MFA Mutual Ins. Co.,* 384 F. 2d 111, 115 (10th Cir. 1967) ; *Truck Ins. Exchange v. Maryland Casualty Co.,* 167 N.W.2d 163, 165 (Iowa 1969) ; *Moss v. Travelers Ins. Co.,* 9 Ohio Misc. 71, 221 N.E.2d 607, 615 (1965), all of which seem to recognize the equity of the minority view but were compelled for various reasons to apply the majority view.