524 A.2d 110

CENTENNIAL INSURANCE COMPANY

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY et al.

No. 1196, Sept. Term, 1986.

Court of Special Appeals of Maryland.

April 20, 1987.

Certiorari Denied Sept. 9, 1987.

Rodger D. Robertson (A. Douglas Owens and Keith L. Arnold, on the brief), Baltimore, for appellant.

James A. Sullivan, (McCormick, Sullivan & Talbott, on the brief), Rockville, for appellee, State Farm.

Patricia Wagstaff, on the brief, pro se.

Argued before ALPERT, BLOOM and KARWACKI, JJ.

BLOOM, Judge.

This appeal presents a question not heretofore answered by the Court of Appeals or this Court: What effect may, or must, be given to conflicting "escape" or avoidance of coverage clauses in two liability insurance policies, each of which would provide coverage to the driver of a motor vehicle involved in a collision if no other policy provides coverage but would deny coverage if any other insurance were available?

The facts that give rise to this case are basically undisputed and singularly uncomplicated. Criswell Chevrolet, Inc., an automobile dealer, provided Robert Crampton with one of its cars as a "loaner" for Crampton's temporary use while his automobile was undergoing repairs in Criswell's shop. The "loaner," with Crampton at the wheel, collided with and damaged Patricia Wagstaff's car, and Ms. Wagstaff filed suit against Crampton and Criswell Chevrolet to recover the cost of repairing her vehicle. Appellant, Centennial Insurance Company, which had issued to Criswell Chevrolet a garage liability policy covering all of the insured's motor vehicles, brought this declaratory judgment action in the Circuit Court for Montgomery County against Crampton, Wagstaff and State Farm Mutual Automobile Insurance Company, which had issued a standard automobile liability insurance policy to Crampton, covering the car that was being repaired by Criswell Chevrolet. Centennial sought a declaration that State Farm, and not Centennial, is obligated to defend Crampton in Wagstaff's suit against him and to pay any judgment awarded against Crampton in that suit. Centennial's policy expressly excludes liability coverage for any customer of its insured unless that customer has no other available insurance, primary, excess or contingent, in which case the Centennial policy would insure the customer, but only up to the compulsory or financial responsibility law limits. Therefore, since the customer in this case, Crampton, had coverage under his own policy with State Farm while driving a temporary substitute automobile, Centennial insists that its exclusion applies and

State Farm is obligated to defend Crampton in Wagstaff's suit against him and pay any damages awarded in that suit. On the other hand, since State Farm's policy does not cover Crampton while he is driving a temporary substitute car owned by anyone in a car business if the owner has liability insurance which is applicable as primary, excess or contingent coverage, and since Centennial's policy provides at least contingent coverage, State Farm takes the position that Centennial's policy covers the damages sustained by Ms. Wagstaff's vehicle. The circuit court ruled in favor of State Farm, and Centennial promptly noted this appeal. Our interpretation of the policies in question leads us to disagree with the positions taken by both insurers and, consequently, to reverse the circuit court.

After providing generally that its liability coverage extends to the use by an insured of a newly acquired car, a temporary substitute car or a non-owned car, the State Farm policy lists several exceptions and limitations to such coverage. The provisions of the State Farm policy applicable to this case are as follows:

If There is Other Liability Coverage

.    .    .    .    .

3.  Temporary Substitute Car, Non-Owned Car, Trailer
    If a *temporary substitute car, a non-owned car* or a trailer designed for use with a *private passenger car* or *utility vehicle* has other vehicle liability coverage on it, then this coverage is excess. THIS COVERAGE SHALL NOT APPLY:
    a.  IF THE VEHICLE IS OWNED BY ANY *PERSON* OR ORGANIZATION IN A *CAR BUSINESS*: AND
    b.  IF THE *INSURED* OR THE OWNER HAS OTHER LIABILITY COVERAGE WHICH APPLIES IN WHOLE OR IN PART AS PRIMARY, EXCESS OR CONTINGENT COVERAGE.

(Emphasis in original.)

There is no dispute that the automobile Crampton was driving was a temporary substitute car and that its owner,

Criswell Chevrolet, was in the car business within the meaning of the State Farm policy.

The following provisions in the policy issued by Centennial to Criswell Chevrolet are pertinent to this case:

D.   WHO IS AN INSURED.

.        .        .        .        .

b.   Anyone else is an insured while using with your permission a covered auto *except:*

.        .        .        .

3.   Your customers, if your business is shown in ITEM ONE of the declarations as an auto dealership.   However if a customer of yours:

(a) Has no other available insurance (whether primary, excess or contingent), he or she is an insured but only up to the compulsory or financial responsibility law limits where the covered auto is principally garaged.

(b) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered auto is principally garaged, he or she is an insured only for the amount by which the compulsory or financial responsibility law limits exceed the limits of his or her other insurance.

(Emphasis in original.)   The parties do not dispute that Crampton was a customer of Criswell Chevrolet and that Criswell Chevrolet is an auto dealership.

"Other insurance" clauses originated in the field of property insurance as a method of protecting the insurer from the "moral hazard" posed by unscrupulous policyholders who would over-insure, then intentionally destroy property. Note, *Automobile Liability Insurance—Effect of Double Coverage and "Other Insurance" Clauses,* 38 Minn.L.Rev. 838, 840 (1954) (hereinafter "Note").   Of course, that "moral hazard" does not exist in the area of liability insurance, yet such clauses appear commonly in liability policies as a means to reduce or eliminate the insurer's loss in the event of concurrent coverage of the same risk.   Comment, *Con-*

.

*current Coverage in Automobile Liability Insurance,* 65 Colum.L.Rev. 319, 320 (1965) (hereinafter "Comment"). As noted by the Court of Appeals, such use of other insurance clauses is neither invalid nor unconscionable and has met with uniform judicial recognition. *Consolidated Mutual Insurance Co. v. Bankers Insurance Co.,* 244 Md. 392, 395, 223 A.2d 594 (1966).

Other insurance clauses come in three varieties: (1) the escape clause, whereby coverage is denied in a double insurance situation; (2) the excess clause, whereby the insurer declares itself liable only for any excess amount of the judgment remaining after the other insurer has paid up to the limit of its policy; (3) the *pro rata* clause, whereby the insurer obligates itself to pay a ratable portion of the loss in the proportion its policy coverage bears to the total coverage protecting the insured. Given these three types of clauses, there exist six possible combinations of clauses that may come into conflict: escape vs. escape; escape vs. excess; escape vs. *pro rata;* excess vs. excess; excess vs. *pro rata* ; and *pro rata* vs. *pro rata.*

The Court of Appeals has had occasion to consider four of the six possible combinations of "other insurance" clauses. In each instance it has taken the approach of resolving such conflicts by construing the policies in the same manner as it would any other contract, *Bond v. Pennsylvania National Mutual Ins. Co.,* 289 Md. 379, 384, 424 A.2d 765 (1981), and by attempting to reconcile the competing provisions. *See e.g., Consolidated Mutual Insurance Co. v. Bankers Insurance Co., supra; Celina Mutual Casualty Co. v. Citizens Casualty Co.,* 194 Md. 236, 71 A.2d 20 (1950). *Cf. National Indemnity Co. v. Continental Insurance Co.,* 61 Md.App. 575, 487 A.2d 1191 (1985). That process of reconciliation has resulted in four general rules: [1]

---

**1.** Several differing approaches have been utilized by other jurisdictions including: the "prior in time" rule, whereby primary coverage is deemed provided by the policy with the earlier effective date; the "primary tort-feasor" approach, which places primary liability on the

1. In *Zurich Insurance Co. v. Continental Casualty Co.*, 239 Md. 421, 212 A.2d 96 (1965), the Court held that an excess clause prevailed over a broadly worded escape clause which excluded coverage "if there is other valid and collectible insurance in force for such person or organization either as an insured under a policy applicable with respect to the automobile or otherwise." But in *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Insurance Co.*, 270 Md. 591, 312 A.2d 265 (1973), the Court held that an escape clause, which specifically referred to the existence of excess insurance coverage as activating the escape provision, prevailed over the excess clause.

2. An excess clause will prevail over a *pro rata* clause. *Consolidated Mutual Insurance Co. v. Bankers Insurance Co., supra.*

3. When both policies provide excess coverage only, liability is shared equally by the insurers. *Ryder Truck Rental, Inc. v. Schapiro & Whitehouse, Inc.*, 259 Md. 354, 364–65, 269 A.2d 826 (1970).

4. A conflict between two *pro rata* clauses results in proportional sharing of liability without either insurer being considered primary or excess. *Celina Mutual Casualty Co. v. Citizens Casualty Co., supra.*

In the case *sub judice,* however, those four rules are of no help because we are presented with an entirely different conflict between other insurance clauses: escape vs. escape.

The two escape clauses are, of course, dissimilar in language and approach. State Farm's policy covered the insured, Crampton, but sought to avoid that coverage if he

---

insurer whose *named* insured was the primary tort-feasor; and the "specific vs. general" approach, whereby the court distinguishes between the relative specificity of the competing clauses and assigns primary liability to the insurer which offered the more specific protection against the loss. *See generally, Note, supra,* at 841–47 and cases cited therein; *Comment, supra,* at 321–22.

drove a car furnished him by someone in the "car business" as a temporary substitute for his own automobile. Centennial insured the automobile, but sought to avoid coverage if it were driven by a member of a certain class. Despite the differences between them, however, both policies attempt to deny coverage totally in the event there were other available liability insurance coverage but will provide coverage if there is no other available insurance. If we read State Farm's policy first, Crampton was not covered by it at the time he collided with Ms. Wagstaff's car because the vehicle he was driving as a temporary substitute automobile was owned by a corporation engaged in a car business and there was at least contingent liability insurance on the car. But if we read Centennial's policy first, Crampton, as a customer of the insured, was not covered by that policy because State Farm's policy provided at least contingent coverage for him. There being no logical reason why a court should choose to read either policy before the other, the two escape provisions are simply irreconcilable and totally incompatible.

■ State Farm would have us resolve the problem by invalidating Centennial's escape clause as violative of the compulsory insurance provisions of Maryland's motor vehicle laws, as set forth in Md. Transp. Code Ann., Title 17 (Vehicle Laws—Required Security), §§ 17–101 through 17–301. It argues that the only permitted exclusions from coverage in an automobile liability policy are those enumerated in Md.Code Ann. art. 48A, §§ 240C–1, 541(c)(2), and 545. Those three sections, however, are totally inapposite to this case. The first, § 240C–1, deals only with cancellation or non-renewal because one of two or more covered drivers is a bad risk, and provides for exclusion of coverage for that driver as an alternative to cancellation or non-renewal. The second statute, § 541(c)(2), permits only specified exclusions from required uninsured motorists coverage. And the third, § 545, permits only specific, limited, exclusions from the benefits of the first person, no-fault, personal injury protection mandated by § 539. What confronts us in this case, however, is an exclusion from *liability* cover-

age, and State Farm has not directed our attention to any statute or regulation that would require an automobile liability policy to insure everyone who might drive the covered vehicle. Indeed, under regulations promulgated by the Insurance Commissioner, the owner of an automobile which is to be rented for a period in excess of 180 days may satisfy the required security or compulsory insurance requirements of the Transportation Code by requiring the lessee to procure the security, Md. Regs. Code title 11, § 18.04; and one who is exclusively engaged in the temporary substitute vehicle leasing business may satisfy his obligation to provide security by certifying that:

1.  He is exclusively engaged in the temporary substitute vehicle leasing business;

2.  He leases his vehicles exclusively to insured Maryland vehicle operators whose vehicles are out of use because of breakdown, repair, servicing, loss, or destruction;

3.  He has valid excess insurance extending coverage to an owned motor vehicle while temporarily substituting for the insured motor vehicle; and

4.  He will assume responsibility for a claim arising from the operation of the vehicle if the insurance carrier for the lessee and his excess carrier deny coverage.

Md. Regs. Code title 11, § 18.04.

These regulations, of course, do not themselves apply to this case, since Criswell Chevrolet is not exclusively engaged in the temporary substitute vehicle leasing business and does carry liability insurance on all of its vehicles as part of its general garage liability coverage. The regulations do make it clear, however, that under certain circumstances the primary responsibility to provide required liability insurance coverage for a motor vehicle may be shifted from the owner of the vehicle to one permitted by the owner to operate it. We see no violation of the compulsory insurance law in the escape clause in Centennial's policy. It merely attempts to shift the responsibility for coverage to

Criswell Chevrolet's customer, who would ordinarily be operating a "loaner" car only as a temporary substitute for his own insured car and therefore should be covered by his own policy, while providing the required insurance if there is no other insurance to which the responsibility can be shifted.

We also find no merit to the argument that *Jennings v. Government Employees Insurance Co.*, 302 Md. 352, 488 A.2d 166 (1985), compels invalidation of the Centennial escape language. There, the Court of Appeals held that a "household exclusion" contained in an automobile liability policy violated public policy as evidenced by the required security provisions of § 17–103(b) of the Transportation Article. Excluding a whole class of people from receiving the minimum benefits ($20,000 for any one person/ $40,000 for two or more persons/ $10,000 property damage) provided by that section is contrary to the intent of the General assembly. In the case *sub judice,* however, no one is being denied a recovery of benefits; the issue here is who must provide those benefits. Whether State Farm or Centennial (or both) ultimately must defend Crampton in the Wagstaff action and pay a resulting claim, the minimum protection required by § 17–103(b) is available to the injured party. Consequently, there is no violation of legislative policy. For analogous holdings, see *Royal-Globe Insurance Co. v. Safeco Insurance Co.*, 560 S.W.2d 22 (Ky.App.1977) (compulsory insurance laws exist to protect the public at large, not insurers; thus when the controversy does not concern whether coverage exists, but which insurer should pay, the public policy behind Kentucky's compulsory insurance act is met); *State Farm Mutual Automobile Insurance Co. v. Auto-Owner Insurance Co.*, 331 So.2d 638, 641 (Ala.1976) (policy behind Alabama Motor Vehicle Safety Responsibility Act is met when insured party is afforded minimum required coverage and only question is from which carrier he will receive the benefits). *Cf. Universal Underwriters Insurance Co. v. Veljkovic,* 613 S.W.2d 426 (Ky.App.1980) (holding that escape clause violated public policy when

action is between a member of the public and an insurance company rather than between two insurance companies). *But see Tahash v. Flint Dodge Co.,* 115 Mich.App. 471, 321 N.W.2d 698 (1982) (holding, without analysis, that escape clause excluded broad class of people from coverage, therefore the clause violated Michigan public policy).

■ Having determined that Centennial's escape provision is not invalid, we must now consider what to do with the competing clauses. The problem posed by conflicting escape clauses is relatively new to this country.[2] As late as 1966 there were no reported American decisions dealing with this matter. Comment, *Effect of Conflicting "Other Insurance" Clauses,* 41 Wash.L.Rev. 564, 567 (1966). In the few cases that have arisen the courts have found no basis upon which the conflicting clauses can be reconciled. *See e.g., State Farm Mutual Automobile Insurance Co. v. Employers Commercial Union Insurance Co.,* 35 Colo. App. 406, 535 P.2d 266, 268 (1975); *World Rent-A-Car, Inc. v. Stauffer,* 306 So.2d 131, 133 (Fla.App.), *cert. denied,* 321 So.2d 557 (Fla.1975); *Southern Home Insurance Co. v. Willoughby,* 124 Ga.App. 162, 182 S.E.2d 910, 913 (1971); *Ohio Casualty Insurance Co. v. State Farm Mutual Automobile Insurance Co.,* 511 S.W.2d 671, 674 (Ky.1974); *Drude v. Ryals,* 216 So.2d 647, 649 (La.App.), *cert. denied,* 253 La. 734, 219 So.2d 513 (1969); *Travelers Indemnity Co. v. Chappell,* 246 So.2d 498, 504 (Miss.1971); *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Insurance Co.,* 594 S.W.2d 950, 956 (Mo.App.1980); *State Farm Mutual Automobile Insurance Co. v. Mid-Continent Casualty Co.,* 518 F.2d 292 (10th Cir.1975) (interpreting Oklahoma law). As noted *supra,* depending upon which policy is read first, the contingent coverage of

---

**2.** Apparently, the first reported case involving two escape clauses was an English case, *Weddell v. Road Transp. & Gen. Ins. Co.,* [1932] 2 K.B. 563 (1931). The Court in that case refused to give effect to either clause and pro-rated the loss.

the other policy activates the non-liability provision in the first read policy, and since we can conceive of no logical or legal basis for reading one policy before the other, we are left with two alternatives: we may give effect to both provisions or to neither. Were we to take the former approach, both insurers would escape payment and Crampton would be left unprotected despite the existence of two policies of insurance otherwise covering his liability. As the Supreme Court of Mississippi noted:

> This thesis extended would mean that, although one pays for liability insurance he would also have to pay for ... [the] liability that occurred as a result of an accident simply because it was discovered that some other company also had insurance covering the same accident.

*Travelers Indemnity Co. v. Chappell, supra.* Such a result is unthinkable. We choose, as did the courts in all of the cases cited above, to find the clauses mutually repugnant and nugatory.

Simply negating both of the competing escape clauses does not dispose of this appeal. We must still determine how to apportion liability between the two insurers, and if possible, we must do so by reference to the remaining policy language.

Elimination of the escape clauses leaves excess clauses in each policy to be considered. Neither of those provisions, however, applies to the facts before us. The Centennial excess provision is effective only when other available insurance is insufficient to meet the requirements of Maryland's financial responsibility statute, which has no applicability to this case. The State Farm excess clause, on the other hand, only applies to those temporary substitute vehicles acquired from one *not* engaged in the "car business." That provision also is not applicable. *Cf. Travelers Indemnity Co. v. Chappell, supra,* 246 So.2d at 504–05 (reaching same conclusion with respect to comparable policy language).

Rejection of the escape clauses as irreconcilable and the excess clauses as inapplicable does not exhaust the reservoir of "other insurance" language contained in both policies. The Centennial policy reads:

Part III. Conditions

B. OTHER INSURANCE.

.     .     .     .     .

2. When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis.

State Farm's policy contains a similar *pro rata* provision:

2. Other Liability Coverage Available From Other Sources:

Subject to item 1, if other vehicle liability coverage applies, we are liable only for our share of the damages. Our share is the per cent that the limit of liability of this policy bears to the total of all vehicle liability coverage applicable to the accident.

These provisions in both policies for *pro rata* sharing in the event of other insurance are compatible and reconcilable. As noted *supra*, the rule for resolving competing *pro rata* clauses is to order proportional sharing of liability with neither company being considered the primary or excess insurer. *Celina Mutual Casualty Co. v. Citizens Casualty Co., supra.* Accordingly, the court erred in not declaring that Centennial and State Farm must share the burden of defending Crampton and satisfying any claim on the basis of their relative liability exposure.

JUDGMENT REVERSED AND CASE REMANDED FOR ENTRY OF A DECLARATORY JUDGMENT CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY EACH PARTY.