638 A.2d 1220

UNIVERSAL UNDERWRITERS INSURANCE COMPANY, et al.

v.

ALLSTATE INSURANCE COMPANY, et al.

No. 962, Sept. Term, 1993.

Court of Special Appeals of Maryland.

April 1, 1994.

Frank W. Braden, Jr. (Don F. Ryder, Jr. and Schroeder, Ryder, Braden, on the brief), Rockville, for appellants.

Thomas Patrick Ryan (McCarthy, Wilson & Ethridge, on the brief), Rockville, for appellees.

Argued before DAVIS, MOTZ and HARRELL, JJ.

MOTZ, Judge.

This appeal concerns the liability of two insurance companies for losses arising from an automobile accident involving a vehicle owned by a dealer, who was insured by one company, when "test driven" by a driver, who was insured by the other company.

The facts are undisputed. Appellant, Universal Underwriters Insurance Company (Universal), issued a Maryland policy to Crystal Ford, Ltd. (Crystal), a car dealership, which provided garage liability protection for vehicles owned by Crystal.

Appellee, Allstate Insurance Company (Allstate), had previously issued an individual automobile indemnity policy in Kentucky to Scott A. Lynn, the prospective purchaser of a car owned by Crystal. On April 20, 1991, Mr. Lynn obtained Crystal's permission to test drive a vehicle being offered for sale by the dealer. During his test drive, Mr. Lynn struck a vehicle operated by a third party, in which Delores Hayes was a passenger. Ms. Hayes sustained injuries as a result of the collision and, in March, 1992, sued both Mr. Lynn and Crystal in the Circuit Court for Montgomery County for damages allegedly caused by his negligence.

Universal filed the instant declaratory judgment action in May, 1992. In its complaint, Universal sought a declaration that Mr. Lynn's Allstate policy provided primary coverage for Ms. Hayes's damage, that Allstate bore "the primary duty to defend and indemnify" Mr. Lynn, and that Universal's duty, if any, was "excess" to that of Allstate. Allstate subsequently moved for summary judgment; Universal filed a cross-motion for summary judgment. Following a hearing on the motions, the circuit court granted summary judgment in favor of Allstate and denied Universal's motion. The court issued a declaration that:

> Universal Underwriters Insurance Company, as primary insurer, is obligated to defend and indemnify (up to its policy limits) the defendant, Scott A. Lynn, for all claims arising from the occurrence which underlies this action, with the policy of Allstate Insurance Company providing excess coverage up to its policy limits.

Universal seeks reversal of the declaratory judgment granted in favor of Allstate. Before this Court, Universal raises a single question:

> Did the trial court err in declaring that Universal's policy was primary and Allstate's excess rather than requiring the carriers to share the cost of defense and indemnity equally?

Where as here factual issues are undisputed, an appellate court determines whether the moving party was entitled to summary judgment as a matter of law. *Beatty v. Trail-*

*master Products, Inc.*, 330 Md. 726, 737, 625 A.2d 1005 (1993). The applicable standard of review is simply "whether the trial court was legally correct." *Id.*

██ The Universal policy owned by Crystal provides:

INSURING AGREEMENT—WE will pay all sums the INSURED legally must pay as damages (including punitive damages where insurable by law) because of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD.

"AUTO HAZARD" is defined as:

[T]he ownership, maintenance, or use of any AUTO YOU own or which is in YOUR care, custody, or control and . . . furnished for the use of any person or organization.

The policy then states who might be considered an insured within the meaning of the auto hazard protections:

1. YOU;

2. Any of YOUR partners, paid employees, directors, stockholders, executive officers, a member of their household or a member of YOUR household, while using an AUTO covered by this Coverage Part, or when legally responsible for its use. The actual use of the AUTO must be by YOU or within the scope of YOUR permission;

3. Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission.

Other provisions narrow the breadth of the policy's coverage:

THE MOST WE WILL PAY * * * With respect to persons or organizations required by law to be an INSURED, the most WE will pay is that portion of such limit needed to comply with the minimum limits provision of such law in the jurisdiction where the OCCURRENCE took place. When there is other insurance applicable, WE will pay only the amount needed to comply with such minimum limits after such other insurance has been exhausted.

*       *       *       *       *       *

OTHER INSURANCE—The insurance afforded by this COVERAGE PART is primary, *except it is excess ... for any person or organization who becomes an INSURED under this Coverage Part as required by law.*

(emphasis added). The policy's "general conditions" further specify its purported relationship to other insurance:

OTHER INSURANCE—Unless stated otherwise in a Coverage Part, this insurance is excess over any other insurance, whether it is collectible or not. [The policy's Maryland amendment deletes the words "whether collectible or not" from the end of the last sentence.]

Taken together, these provisions unambiguously state that when an auto owned by the policyholder is driven by a person "who becomes an Insured ... as required by law," like Mr. Lynn, a test driver, the policy is "excess" when other insurance is "applicable."

Mr. Lynn's Allstate policy also contains an "excess" insurance provision. The provision is applicable whenever its insured, here Mr. Lynn, drives a vehicle not owned by him. Although the policy states that it will provide coverage to its insured if it is driving a "non-owned" vehicle, it nonetheless restricts coverage:

If There is Other Insurance

Our liability insurance will be excess over any other collectible insurance if:

1. an insured person is using a substitute private passenger auto or non-owned auto. . . .

Mr. Lynn's policy with Allstate then, equally unambiguously is "excess" to other insurance when, as here, the insured is driving a car not owned by him and other insurance is applicable.

The situation presented in this case concerns "double or overlapping insurance," which occurs when more than one insurance policy might cover damages arising from a claim involving a single vehicle. *Nolt v. United States Fidelity and Guaranty Co.*, 329 Md. 52, 60, 617 A.2d 578 (1993). Because a literal reading of the excess clauses of each policy "would

leave the insured without coverage," we must determine which policy (or policies) is (or are) "primary" and which is (or are) "excess." *Ryder Truck Rental, Inc. v. Schapiro & Whitehouse, Inc.,* 259 Md. 354, 361 n. 1, 269 A.2d 826 (1970) (observing that no court has accepted the argument that conflicting excess provisions ought to preclude liability of the insurers). Universal argues that it and Allstate should bear equally the indemnification and defense of Mr. Lynn; Allstate claims that Universal should be regarded as the primary insurer, with Allstate providing only excess coverage. Both companies rely on the Court of Appeals' *Ryder* opinion.

The *Ryder* court noted that the facts presented there were unique and "apt never to recur." *Ryder,* 259 Md. at 355, 269 A.2d 826. Two insurers disputed their relative liabilities arising from an accident involving a tractor-trailer combination. It appeared "that the proximate cause of the accident was ... negligence in the maintenance of the brakes on [the] trailer." *Id.* at 360, 269 A.2d 826. What made *Ryder* so unusual was that the dispute involved the insurers of two vehicle *owners* (each of whom owned one component of the tractor-trailer combination), not the more usual case of the insurer of the owner and the insurer of a non-owning operator. Both owners' policies provided that their coverage was excess when the accident arose out of the use of a non-owned vehicle. To invoke its excess clause, the insurer of the tractor's owner asserted that the accident arose from the use of the tractor rather than the maintenance of the trailer; the insurer of the tractor's owner relied on the fact that the accident arose from the use of the trailer to invoke its excess clause. *Id.* at 361–62, 269 A.2d 826. Each insurer, thus, claimed that its coverage was excess to the other because the accident arose from the use of a non-owned vehicle within the meaning of the policies.

In a footnote, the *Ryder* court distinguished this "true excess-excess conflict" from that between the "owner of an automobile insured with an omnibus clause and a driver whose policy covers the use of non-owned vehicles." *Id.* at 365 n. 2, 269 A.2d 826. In the latter situation, the *Ryder* Court noted

that "[t]he cases and the writers support . . . a rule" that "the owner's insurer must pay when his insurance has an 'other insurance' clause and the driver's insurance is 'excess only' with respect to non-owned vehicles." *Id.* In *Ryder*, itself, however, coverage was allocated equally between the insurance carriers because, as the Court explained: "the instant case does not involve the clear cut owner-non-owner distinction. It involves policies where two 'non-owner' excess clauses are in direct conflict and the rule [enunciated in the footnote] has no application." *Id.*

Allstate asserts that because the present case is one in which there is a "clear cut owner-non-owner distinction," the "rule" set forth in the *Ryder* footnote is applicable, *i.e.*, the owner's insurer, Universal, is the primary insurer and the driver's insurer, Allstate, need only provide excess insurance. On the other hand, Universal maintains that the "rule" set forth in the *Ryder* footnote is not current Maryland law, as demonstrated by three Maryland appellate decisions subsequent to *Ryder*. Thus, although they disagree on the significance of the "rule" in the *Ryder* footnote, both sides appear to agree that, if it is Maryland law, that "rule" controls here. This is a fundamental error in both arguments.

This error may have arisen because neither party recognizes precisely when the "rule" referred to in the *Ryder* footnote is applicable. A review of the cases in which that "rule" has been followed makes it clear that the rule comes into play when the owner's insurance policy provides that, when there is other valid and collectible insurance, there is only pro rata coverage and both the owner's and driver's policies contain similar excess clauses, which provide that coverage is excess as to non-owned vehicles. Since both policies provide that they are excess when a *non-owned* vehicle is involved, the excess clause of the driver's policy is triggered; the similar excess clause in the owner's policy, however, is not triggered because the owner's car was, in fact, involved in the accident.

In this situation, the majority rule is that the driver's insurance does not constitute "valid and collectible insurance" within the meaning of the pro-rata clause in the owner's policy and so the owner's insurance is primary and the driver's insurance is only excess. *See, e.g., American Surety Co. of New York v. Canal Ins. Co.*, 258 F.2d 934, 936 (4th Cir.1958) (cited in *Ryder* footnote); *General Ins. Co. v. Western Fire & Cas. Co.*, 241 F.2d 289, 295 (5th Cir.1957) (cited in *Ryder* footnote). *American Auto Ins. Co. v. Republic Indemnity Co.*, 52 Cal.2d 507, 341 P.2d 675, 678 (1959); *Jensen v. New Amsterdam Ins. Co.*, 65 Ill.App.2d 407, 213 N.E.2d 141, 143–45 (1965); *Transamerica Ins. Co. v. Norfolk & Dedham Mut. Fire Ins. Co.*, 361 Mass. 144, 279 N.E.2d 686, 688–89 (1972); *United States Fidelity and Guaranty Co. v. Safeco Ins. Co.*, 522 S.W.2d 809, 821 (Mo.1975); *Union Ins. Co. v. Farmland Ins. Co.*, 389 N.W.2d 820, 822 (S.D.1986); *Millers Cas. Ins. Co. of Texas v. Briggs*, 100 Wash.2d 9, 665 P.2d 887, 889–90 (1983) (en banc); *Allstate Ins. Co. v. State Automobile Mut. Ins. Co.*, 178 W.Va. 704, 364 S.E.2d 30, 32–33 (1987); 8A John A. Appleman & Jean Appleman, *Insurance Law & Practice* § 4909.45, at 418–31 (1981) (predecessor edition cited in *Ryder* footnote) [hereinafter *Appleman on Insurance* ].

Although this precise situation seems never to have arisen in any reported Maryland opinion, there is no reason to believe that Maryland courts would not follow this rule. Certainly, the *Ryder* footnote suggests this. Moreover, contrary to Universal's claims, three more recent Maryland cases do not require a contrary conclusion. Universal relies on *Nolt, supra; Centennial Ins. Co. v. State Farm Mut. Auto Ins. Co.*, 71 Md.App. 152, 524 A.2d 110, *cert. denied, State Farm Mut. v. Centennial Ins.*, 310 Md. 491, 530 A.2d 273 (1987); and *Nat'l Indemnity Co. v. Continental Ins. Co.*, 61 Md.App. 575, 487 A.2d 1191 (1985). Those three cases do not involve fact situations similar to that articulated in the *Ryder* footnote, *i.e.*, a contest as to coverage between an owner's insurer and a non-owner's insurer, when the policies contain identical non-owner excess clauses. Thus, there is nothing to indicate that

the "rule" set forth in the *Ryder* footnote would not be applied in Maryland—in an appropriate case.

The case at hand, however, is not such a case. It simply does not involve the situation governed by the rule alluded to in the *Ryder* footnote. It is, of course, true that here, as in the cases following that rule, there is a contest as to coverage between the owner's insurer and the driver's insurer, that both policies have excess clauses, and that the driver's excess clause is applicable because it provides that it is excess for non-owned vehicles. The critical distinction between this case and the cases following the rule explicated in the *Ryder* footnote is that here the excess clause in the owner's policy is also applicable. This is so because that clause does *not* simply provide that coverage is excess when liability arises out of use of "non-owned" vehicles. Rather, the owner's policy provides that coverage is excess "for any person ... who becomes an Insured ... as required by law," *e.g.*, a test driver like Mr. Lynn.

▆ Because in the instant case the owner's excess clause is just as applicable as the driver's excess clause, the two excess clauses directly conflict. In this—the current—situation, the majority rule is that the excess clauses "are to be disregarded (as mutually repugnant) and each of the coverages is treated as primary insurance (and the liability is prorated)." Robert E. Keeton & Alan I. Widiss, *Insurance Law* § 3.11(e)(2), at 263 (1988), and cases cited therein; *accord* 8A *Appleman on Insurance,* § 4909, at 399–408. *See, e.g., Weekes v. Atlantic Nat'l Ins. Co.,* 370 F.2d 264, 273–74 (9th Cir.1966), and cases cited therein; *Maryland Cas. Co. v. Continental Cas. Co.,* 189 F.Supp. 764, 772 (N.D.W.Va.1960); *State Farm Mut. Automobile Ins. Co. v. General Mut. Ins. Co.,* 282 Ala. 212, 210 So.2d 688, 694–95 (1968); *Continental Cas. Co. v. Hartford Accident & Indemnity Co.,* 213 Cal.App.2d 78, 28 Cal.Rptr. 606, 609–12 (1963); *Athey v. Netherlands Ins. Co.,* 200 Cal.App.2d 10, 19 Cal.Rptr. 89, 92–93 (1st Dist.1962); *Continental Cas. Co. v. New Amsterdam Cas. Co.,* 28 Ill.App.2d 489, 171 N.E.2d 406 (1960); *Truck Ins. Exchange v. Maryland Cas. Co.,* 167

N.W.2d 163, 164–65 (Iowa 1969); *Western Cas. & Surety Co. v. Universal Underwriters Ins. Co.*, 232 Kan. 606, 657 P.2d 576, 579–80 (1983); *State Farm Mut. Automobile Ins. Co. v. Universal Underwriters Ins. Co.*, 594 S.W.2d 950, 957–58 (Mo.Ct.App.1980); *Bill Atkin Volkswagen, Inc. v. McClafferty*, 213 Mont. 99, 689 P.2d 1237, 1241–42 (1984); *Buckeye Union Ins. Co. v. State Automobile Mut. Ins. Co.*, 49 Ohio St.2d 213, 3 O.O.3d 330, 331–33, 361 N.E.2d 1052, 1053–55 (1977) (citing *Continental Cas. Co. v. Buckeye Union Cas. Co.*, 75 Ohio Law Abs. 79, 143 N.E.2d 169, 180 (Ct.C.P.1957)).

There is a small body of law to the contrary. *See Commercial Union Ins. Co. v. Ins. Co. of North America*, 155 Ga.App. 786, 273 S.E.2d 24, 28 (1980); *Auto Owners Ins. Co. v. Northstar Mut. Ins. Co.*, 281 N.W.2d 700, 702–04 (Minn.1979); *Travelers Indemnity Co. v. Chappell*, 246 So.2d 498, 505–06 (Miss.1971); *State Farm Mut. Automobile Ins. Co. v. Universal Underwriters Ins. Co.*, 181 W.Va. 609, 383 S.E.2d 791, 796 (1989). The reasoning in these cases, however, is not persuasive. Moreover, the majority rule is the only one that is consistent with Maryland law.

Indeed, the majority rule is the only one consistent with the *Ryder holding.* There, as here, both excess clauses were "fully operative" and so in direct conflict. *Ryder*, 259 Md. at 364, 269 A.2d 826. The *Ryder* court noted that it had not found "any case presenting a genuine, clearcut conflict of excess clauses, in which the court did not require some kind of proration of the loss between the insurers involved." *Id.* After reviewing various methods of proration, the Court of Appeals concluded that liability should be equally shared by the insurers. *Id.* at 365, 269 A.2d 826. *See also Nolt*, 329 Md. at 60, 617 A.2d 578 ("[w]here both policies provide for excess coverage only, liability is shared equally by the insurers"); *Centennial*, 71 Md.App. at 158, 524 A.2d 110 (same); *Nat'l Indemnity*, 61 Md.App. at 579, 487 A.2d 1191 ("[w]hen a conflict occurs between two excess clauses, liability is shared equally by the insurers").

In sum, it is the *Ryder* holding, not the "rule" discussed in the *Ryder* footnote, that is relevant here. Accordingly, the circuit court erred. The excess clauses in the Universal and Allstate policies are mutually repugnant and so must be disregarded; each policy is to be treated as providing primary insurance. Universal and Allstate are, thus, obligated to share equally the costs of providing a defense and indemnification to Mr. Lynn.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEE.