**SCOTTSDALE INSURANCE CO.**

**v.**

**AMERICAN EMPIRE SURPLUS LINES INSURANCE CO.**

**Civ. No. JFM–91–1422.**

United States District Court,
D. Maryland.

Feb. 11, 1992.

On Motion for Partial Reconsideration
April 15, 1992.

Donald C. Allen, Denise Ramsburg Stanley, Allen, Johnson, Alexander & Karp, Baltimore, Md., for plaintiff.

Kathleen M. McDonald, Irwin, Kerr, Green, McDonald & Dexter, Baltimore, Md., for defendant.

## MEMORANDUM

MOTZ, District Judge.

In this action Scottsdale Insurance Company ("Scottsdale") seeks indemnification

or contribution from American Empire Surplus Lines Insurance Company ("American Empire") for a settlement which Scottsdale paid and defense costs which it incurred in connection with a lead paint exposure suit filed against their mutual insured, Richard A. Shepherd, t/a Shepherd's Properties ("Shepherd").

Lying at the heart of the case is the difficult question of the application of the policy term "occurrence" in the lead paint context. However, the record is not yet sufficiently developed on the issues of medical causation to permit the resolution of that question. This memorandum therefore addresses four subsidiary questions: (1) whether a trial is necessary to determine if American Empire was prejudiced by being given untimely notice of the underlying tort suit, (2) whether Scottsdale's settlement of the underlying tort action was reasonable, (3) whether American Empire must pay defense costs incurred in the tort action and (4) whether American Empire must pay the costs which Scottsdale has incurred in this action. Scottsdale has moved for summary judgment as to all four of these issues, and American Empire has cross-moved for summary judgment as to the latter two.

### I.

On December 6, 1986, Avis Anthony individually and as mother of Candice Anthony, filed a complaint in the Circuit Court for Baltimore City. Anthony alleged that her daughter sustained lead poisoning as a result of ingesting lead paint at 2534 Garrett Avenue in Baltimore City where the Anthonys lived from May or June 1985 through July 1986. The Garrett Avenue property was owned and managed by Shepherd. Shepherd was insured with respect to that property by American Empire from January 23, 1985 and by Scottsdale from October 8, 1985 to October 8, 1986. Discovery conducted during the course of the Anthony suit revealed that a blood test conducted on Candice on May 6, 1985 showed a distinctly elevated Free Erythrocyte Protoporphyrin test and that the first clear elevation of lead in her blood was recorded on October 22, 1985.

Upon being notified of the *Anthony* suit Scottsdale undertook the defense of it. Shepherd's records apparently were in disarray and it was not until the fall of 1990 that Shepherd and Donald Allen, the lawyer retained by Scottsdale to represent him, found the American Empire policy. Mr. Allen then advised Scottsdale of its existence. On October 10, 1990 a Scottsdale claims examiner wrote to American Empire's claims manager, notifying American Empire of the suit and stating that "since there is an exposure to your policy, we ... invite your participation in the settlement of this matter." The letter was received by American Empire on October 16, 1990. Scottsdale immediately made its investigative file and copies of the medical reports available for review by American Empire. On November 7, 1990, confirming a telephone conversation of October 29, 1990, American Empire's claims manager advised Scottsdale that "our position is that we will not contribute to this claim and will not respond in the defense of this matter."

The *Anthony* suit was nearing its end by the time that American Empire was notified of it. Discovery was completed, and the trial was scheduled for November 13, 1990. Furthermore, a settlement conference had been held before Judge Albert Sklar on October 2, 1990. During the course of that conference the following occurred: (1) plaintiff's counsel reiterated a $550,000 demand which he had previously made; (2) counsel for Government Employees Insurance Company ("GEICO"), the insurer of a co-defendant (the owner of a property where the Anthonys had previously resided), stated that he did not yet have any authority to contribute to any settlement; (3) Allen made an offer of $100,000; (4) plaintiff reduced his demand to $450,-000; and (5) Judge Sklar recommended a settlement of $300,000. Mr. Allen then said that he would recommend $225,000, conditioned on a $75,000 contribution being made by GEICO. No such offer was forthcoming, and the conference was ended without a settlement being reached.

The case was not reached for trial on November 13th and was rescheduled for

December 13th. That day lengthy settlement negotiations were held in the chambers of Judge Thomas Ward. During the course of those negotiations plaintiff's counsel reduced his demand to $190,000 and GEICO offered $37,500. At the Judge's urging Mr. Allen then requested Scottsdale to contribute $152,500 to the settlement. After consultation with Mr. Allen, Scottsdale agreed to that figure and a settlement was reached. Thereafter, a brief hearing was held during which the terms of the settlement were placed on the record. Judge Ward (upon Mr. Allen's prompting) expressed his approval of the settlement and added "in fact, it's my figure."

## II.

Scottsdale has moved for summary judgment on the issues of (1) whether American Empire may disclaim coverage because it allegedly was prejudiced by Shepherd's failure to give it timely notice of the *Anthony* suit, and (2) whether settlement of the tort action was reasonable. While opposing Scottsdale's motion, American Empire has not sought summary judgment itself on those issues.

### A. *Prejudice From Untimely Notice*

 There is no doubt that American Empire did not receive timely notice.[1] The suit was filed in December 1986, and American Empire did not receive notice of it until October 1990. Under Maryland law, however, late notice to an insurer will not eliminate its obligations under a liability policy unless the insurer can prove that it has been prejudiced by the delay. In that connection section 482 of article 48A of the Maryland Code provides:

**1.** American Empire's policy requires that, in the event of an occurrence, the insured notify American Empire in writing "as soon as practicable" and "immediately forward to the company every demand, notice, summons or other process received."

**2.** *West Bay Exploration Co. v. AIG Specialty Agencies of Texas, Inc.,* 915 F.2d 1030 (6th Cir. 1990) and *Steelcase, Inc. v. American Motorists Ins. Co.,* 907 F.2d 151 (6th Cir.1990) illustrate the type of case in which an insurer is able to prove actual prejudice resulting from late no-

Where any insurer seeks to disclaim coverage on any policy of liability insurance issued by it, on the ground that the insured or anyone claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving requisite notice to the insurer, such disclaimer shall be effective only if the insurer establishes, by a preponderance of affirmative evidence that such lack of cooperation or notice has resulted in actual prejudice to the insurer.

Here, the only "affirmative evidence" of prejudice to which American Empire points is the lateness of the notice itself.[2] It argues that its receipt of notice of the *Anthony* suit four years after the suit was filed, on the eve of trial and after settlement negotiations with the court had begun, necessarily implies prejudice. In support of its argument it relies upon *Washington v. Federal Kemper Ins. Co.,* 60 Md.App. 288, 482 A.2d 503, 507 (1985).

In *Washington* the Maryland Court of Special Appeals did state, in regard to the prejudice issue, that an insurer should not be required "to assume the burden of proving a negative." There, however, the insurer had not been notified of the claim until after a verdict had been entered against the insured. The court carefully limited to that context—and to that context alone—its holding that the insurer need not produce other affirmative evidence of prejudice. Thus, the court stated: "It is impossible for the carrier to demonstrate to the court what witnesses it might have discovered, what defense it might have made, and what disposition it might have reached in settlement *if it had received notice before*

tice. In both of those cases the insurer was held to be relieved of its duty to defend because the insured had, prior to giving notice of environmental claims asserted against it, disposed of underground barrels which leaked contaminants. As a result, the insurer could no longer determine whether the leaks had been gradual or whether they had been intentional and thus not covered. In contrast, in the instant case the facts pertaining to disease manifestation and medical causation upon which the coverage question turns remain fully ascertainable.

*the verdict was rendered...."* 60 Md. App. at 295–96, 482 A.2d at 507 (emphasis added). Similarly, it went on to say that *"where the insurer has been deprived of all opportunity to defend,* the mere entry of the adverse judgment is affirmative evidence of actual prejudice to the insurer." 60 Md.App. at 296, 482 A.2d at 507 (emphasis added). Nothing in *Washington* suggests that its holding was intended to be extended to cases where notice of the claim is late but prior to the entry of judgment (or, at least, prior to the consummation of settlement). To so extend it would be to undermine the express mandate of section 482.[3]

### B. *The Reasonableness of the Settlement*

■ As a threshold matter, American Empire contends that Scottdale's motion for summary judgment on the issue of the reasonableness of the settlement is based upon inadmissible evidence. Specifically, American Empire challenges Scottsdale's reliance upon letters written to Scottsdale by Donald Allen, reporting on the settlement conferences held with Judge Sklar on October 2, 1990 and with Judge Ward on December 13, 1990.[4]

American Empire argues that these letters contain inadmissible hearsay. The argument is without merit. What American Empire apparently alleges to be "hearsay" are the demand, offers and recommendations made during the course of the settlement conference. There is a hearsay component to those statements to the extent that they are being offered for the purpose of establishing that the demands, offers and recommendations reflected the actual valuations of the case by the persons who made them. Those persons would have to be questioned to ascertain their true state of mind. However, the objective course that the negotiations took is itself relevant to the reasonableness of the settlement which was ultimately reached, and to the extent that the various demand, offers and recommendations have been presented for the purpose of establishing the settlement dynamics, they are not hearsay and Mr. Allen's reports are competent evidence of them.[5]

■ There is one opinion of the reasonableness of the settlement which is in the record: Mr. Allen's own. He reported to Scottsdale after the settlement was finalized that he believed it to be "quite favorable." American Empire itself characterizes Mr. Allen as "an experienced attorney," and it has not presented any expert testimony contradicting his opinion. Moreover, the course of the settlement negotiations as established by his reports corroborate what he opined. From the time of the first conference held on October 2nd to the end of the second conference held on December 13th, plaintiff's counsel dropped his demand from $550,000 to $190,000, GEICO's counsel raised its offer from 0 to $32,500 and Mr. Allen was required to raise his offer by only $2,500. His performance can hardly be faulted.[6]

---

**3.** It might also be noted that although the notice given to American Empire was late, according to the uncontradicted deposition testimony of Scottsdale's claims examiner, under insurance industry standards thirty days is a sufficient amount of time for an insurer to determine the validity of a claim.

**4.** American Empire also attacks Scottsdale's reliance upon a memorandum to file prepared by Mr. Allen pertaining to an interview which he had with Shepherd and docket entries from other lead paint cases in the Circuit Court for Baltimore City. I need not decide whether or not these documents are properly contained in the summary judgment record since I have not relied upon them in reaching my decision on the reasonableness of the settlement.

**5.** In that connection it might be noted that, apparently recognizing that Mr. Allen's letters would be admissible as a record kept by him in the ordinary course of his profession, American Empire does not contend that the hearsay rule requires that he testify personally to what he heard. *See Fed.R.Evid.* 803(6). American Empire does assert in passing that the letters have not been properly authenticated. That assertion, however, appears to be a mere quibble. If American Empire is seriously challenging the authenticity of the letters, it may file a motion for reconsideration.

**6.** Rather than presenting any affirmative evidence that the settlement amount was not reasonable, American Empire suggests that Mr. Allen did not succeed in getting GEICO to make a

## III.

Both sides have moved for summary judgment on the remaining two issues: whether American Empire is liable for all or part of the defense costs incurred by Scottsdale and whether it is liable for the costs incurred by Scottsdale in instituting this action.

### A. Scottsdale's Defense Costs in the Anthony Suit

 It is well settled that an insurer's obligation to defend is triggered only when the insured tenders to the insurer the defense of an action which is potentially within the policy. *Oweiss v. Erie Ins. Exchange*, 67 Md.App. 712, 718–19, 509 A.2d 711, 714 (1986); *Washington v. Federal Kemper Ins. Co., supra.* Relying upon that rule, American Empire contends that since it was Scottsdale, not Shepherd, who contacted it about the *Anthony* suit, its obligation to defend was never triggered.[7]

American Empire cites *Hartford Accident & Indem. Co. v. Gulf Ins. Co.*, 776 F.2d 1380, 1383 (7th Cir.1985), in support of its position. There, the court did hold that a tender of a defense made by one insurer to another, rather than by the named insured, was insufficient to trigger the obligation to defend. However, the circumstances of that case were somewhat unusual. Not only did the first insurer act entirely on its own, the second insurer proffered that if it were permitted to present evidence on the issue, representatives of the insured would have testified that they believed that the second insured was under no duty to defend.

In the instant case nothing in the record suggests that Shepherd has ever indicated that American Empire does not owe him a duty to defend. To the contrary, Mr. Allen was representing him when he advised Scottsdale of the existence of the American Empire policy for the purpose of having Scottsdale notify American Empire of the pendency of the *Anthony* suit. Therefore, when Scottsdale wrote to American Empire about the suit it was doing so under authority conferred upon it by Mr. Allen as Shepherd's agent. This was fully sufficient under the terms of the American Empire policy, which merely required that notice be given "by or for the insured." Although Scottsdale did not expressly state to American Empire that it was acting on behalf of Shepherd, it was, in fact, doing so, and American Empire has not demonstrated any prejudice which it suffered by virtue of Scottsdale's silence on the point.

 Scottsdale's victory on this point is a somewhat pyrrhic one, however. As sufficient contribution to the settlement. At best, American Empire is engaging in "Monday morning quarterbacking." In fact, the record establishes that Mr. Allen negotiated effectively on behalf of Shepherd and any speculation to the contrary by American Empire—which specifically declined to participate in the settlement negotiations—is untenable.

American Empire also suggests that Mr. Allen may have been improperly motivated by a concern about future lead paint litigation against other property owners insured by Scottsdale when he chose not to file a cross-claim against GEICO's insured and when he decided not to have certain tests conducted at the Garrett Avenue property. The fallacy in this contention is that the record establishes that Shepherd himself is a landlord of numerous properties in which lead paint may have been present. Therefore, even if it may assumed that Mr. Allen was taking into account the interest of Scottsdale in considering the precedential impact of his decisions, he was also taking into account the interest of Shepherd—the mutual insured of Scottsdale and American Empire.

7. American Empire also notes that Scottsdale's October 10, 1990 letter did not expressly request that American Empire participate in the defense but only invited its "participation in the settlement of … [the] matter." In support of that contention, American Empire cites *Eastman v. United States*, 257 F.Supp. 315, 319 (S.D.Ind. 1966), where the court found that the insurer was not liable for defense costs because the government, which was the co-defendant of the insured, had merely invited the insurer to "participate" in the defense. *Eastman*, however, involved a matter of substance, not mere linguistics, since in inviting the insurer to participate, the government had made it clear that it would not relinquish "over-all control" of the defense. Here, Scottsdale made no similar reservation to its invitation. Furthermore, it is clear that when American Empire received Scottsdale's October 10, 1990 letter it fully understood what it was being invited to do since it stated in its responsive letter of November 7, 1990 that "it … [would] not contribute to this claim and … *[would] not respond in the defense of this matter*" (emphasis added).

stated above, an insurer's duty to defend does not arise until it is notified of the claim. *See, e.g., Oweiss v. Erie Ins. Exchange, supra; Washington v. Federal Kemper Ins. Co., supra.* Therefore, the earliest date on which American Empire became obligated to provide a defense to Shepherd was on October 16, 1990, when it first received notice of the *Anthony* suit.[8] It is only for fees and expenses incurred by Scottsdale after that date for which American Empire is jointly liable. *See Gully & Assoc., Inc. v. Wausau Ins. Co.,* 536 So.2d 816 (La.App.1988); *cf. St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.,* 919 F.2d 235, 238 (4th Cir.1990) (insurer which defended action chose not to ask for defense costs incurred prior to the time that co-insurer was notified).[9] Since Scottsdale and American Empire were both obligated to fully defend Shepherd, the proper amount of contribution is 50 percent. *See Ryder Truck Rental, Inc. v. Schapiro & Whitehouse, Inc.,* 259 Md. 354, 269 A.2d 826, 832 & n. 3; *Federal Ins. Co. v. Cablevision Sys. Dev. Co.,* 662 F.Supp. 1537, 1541 (E.D.N.Y.1987).

### D. *Scottsdale's Costs In Instituting This Action*

■ Scottsdale relies upon *Bankers & Shippers Ins. Co. v. Electro Enterprises, Inc.,* 287 Md. 641, 415 A.2d 278, 282 (1980), to support its claim for reimbursement for the attorneys' fees and costs which it has incurred in instituting this action. There, the Maryland Court of Appeals held that an insured could recover its fees and costs in prosecuting a declaratory judgment action against the insurer where the insurer had improperly refused to provide a defense.

Scottsdale contends that the holding in *Bankers & Shippers* should be extended to cases such as this where an insurer has filed a lawsuit to compel a co-insurer to honor its contractual duty to defend because ultimately insureds indirectly pay (by way of increased premiums) fees and costs incurred by their insurers. I am not persuaded by this reasoning. Scottsdale had an independent contractual obligation to defend Shepherd, and, although it may be an unfortunate fact that insureds ultimately pay for the sometimes senseless litigation in which insurers become embroiled, it would be entirely speculative to equate the direct costs incurred by a specific insured in a given case and the indirect costs incurred by insureds generally.

A separate order effecting the rulings made in this memorandum is being entered herewith.

### ORDER

For the reasons stated in the memorandum entered herein, it is this 11th day of February 1992

ORDERED

1. Partial summary judgment is entered on behalf of Scottsdale Insurance Company ("Scottsdale") on the issue of whether American Empire Surplus Lines Insurance Company ("American Empire") was preju-

---

**8.** Arguably, under circumstances such as those presented here where another insurer is already providing a defense to a suit in active litigation, a second insurer's duty to defend should not be said to arise until after the expiration of a reasonable period for it to determine the validity of the claim. The parties have not suggested, however, that this is a matter of significant import here. If American Empire desires to pursue the point in order to be relieved of its share of fees incurred between October 16, 1990 and October 29, 1990 (when it first advised Scottsdale that it would not participate in the defense), it may do so by filing a motion for reconsideration.

**9.** American Empire also argues that because Scottsdale had an independent duty to defend Shepherd, it has no right of contribution for any share of its defense costs. There is a split of authority on this issue. *Compare Rossman v. State Farm Mut. Auto. Ins. Co.,* 832 F.2d 282, 290 (4th Cir.1987) and *Forum Ins. Co. v. Allied Security, Inc.,* 866 F.2d 80, 85 (3rd Cir.1989) with *Barton & Ludwig v. Fidelity & Deposit Co. of Md.,* 570 F.Supp. 1470, 1472 (N.D.Ga.1983) and *Brayman v. Northwestern Mut. Ins. Co.,* 381 F.Supp. 362 (D.Colo.1974). I am persuaded that the better view is that, since each insurer has a duty to defend, each should contribute to the cost of the defense. See R.E. Keeton & Widis, *Insurance Law: A Guide To Fundamental Principles, Legal Doctrines & Commercial Practices* § 9.1(d), at 993–94 (1988) (stating that this view has "more justification"). To hold otherwise would be to reward the insurer who refused to provide a defense for its obduracy.

diced by being given untimely notice of the suit instituted against Richard A. Shepherd, t/a Shepherd's Properties by Avis Anthony;

2. Partial summary judgment is entered in favor of Scottsdale on the issue of the reasonableness of the settlement of the *Anthony* suit;

3. Partial summary judgment is entered on behalf of Scottsdale on the issue of American Empire's obligation to reimburse it for a share of the attorneys' fees and costs incurred by Scottsdale in defending the *Anthony* suit to the extent that American Empire must pay 50 percent of those fees and costs incurred by Scottsdale after October 16, 1990; and

4. Partial summary judgment is entered in favor of American Empire on the issue of whether it must reimburse Scottsdale for the fees and costs incurred by Scottsdale in instituting this action.

### ON MOTION FOR PARTIAL RECONSIDERATION

█ American Empire has filed a motion for partial reconsideration of my February 11, 1992 memorandum. It seeks to be relieved of liability for any defense costs incurred between October 16, 1990, when it was first notified by Scottsdale of the underlying *Anthony* suit and October 29, 1990, when it first advised Scottsdale that it would not participate in the defense. I have previously held that it is not liable for any defense costs incurred prior to October 16, 1990.

American Empire has filed its motion pursuant to a statement which I made in footnote 8 of my February 11th memorandum in which I invited it to do so. I have, however, concluded that American Empire's liability for defense costs should begin as of October 16, 1990. Its duty to defend is a contractual obligation arising from its insurance policy and the policy provides no grace period during which it may consider whether or not to accept a proffered defense. Moreover, to extend such a grace period would be to encourage insurers to delay their acceptance of the defense in violation of their contractual duty and the public interest in the expeditious resolution of litigation.

A separate order denying American Empire's motion is being entered herewith.